JANET F. Fox, Individually and as Parent and Natural Guardian of MICHELLE Fox et al., Infants, and as Administratrix of the Estate of KENNETH W. Fox, SR., Deceased, Respondent, v CHARLES P. MERCER et al., Doing Business as GOODTIME CHARLEY'S, Appellants, et al., Defendants.

Fourth Department, June 4, 1985

### APPEARANCES OF COUNSEL

*Harris, Beach, Wilcox, Rubin & Levey* (*Douglas A. Foss* of counsel), for appellants.

*Robert L. Brenna, Jr.,* for respondent.

### OPINION OF THE COURT

SCHNEPP, J.

Kenneth W. Fox, Sr., was killed in a single-car accident while driving in an alleged intoxicated condition and his widow brought this action on behalf of herself individually and their three children under the Dram Shop Act (General Obligations Law § 11-101) for damages suffered by reason of the loss of his society, companionship, support and maintenance. This action has been consolidated with a wrongful death action instituted

against the County of Monroe and the Town of Greece. The dram shop defendants seek discovery of insurance policies on decedent's life, trust instruments, annuities, bank statements, documents concerning payment of death benefits, and other information relating to plaintiff's financial circumstances since the death of her husband and her current means of support. They appeal from the denial of their motion to compel disclosure of such information.

The narrow issue for our determination is whether the dram shop defendants are entitled to disclosure of this information in defense of plaintiffs' claim under the statute that they have been "injured in * * * means of support" (General Obligations Law § 11-101 [1]). In our view, defendants are seeking information which is not material and necessary in the defense of the dram shop action, does not pass the test of "usefulness and reason" and is not " 'sufficiently related to the issues in litigation to make the effort to obtain it in preparation for trial reasonable' " (*Allen v Crowell-Collier Pub. Co.,* 21 NY2d 403, 406-407). Disclosure of this information would have no bearing on the controversy since damages to plaintiffs' "means of support" should be measured as of the time of death and without regard to receipts from collateral sources.

The Dram Shop Act created a cause of action unknown at common law by allowing recovery against a tavern owner for injuries caused as a result of patron's intoxication (*see, Mead v Stratton,* 87 NY 493; *Volans v Owen,* 74 NY 526; *Moyer v Lo Jim Cafe,* 19 AD2d 523, *affd* 14 NY2d 792) and was enacted for the dual purposes of suppressing the sale and use of intoxicating liquor, and of protecting and providing a remedy for dependents and persons injured by the unlawful sale of liquor (*Matalavage v Sadler,* 77 AD2d 39, 43). Since its inception in 1873 (L 1873, ch 646) the Dram Shop Act has given a right of action for injury to "means of support" and punitive damages. Thus, a means of recovering damages has been established for persons injured by reason of the intoxication of a dram shop's vendee. In the leading cases of *Volans v Owen* (74 NY 526 [1878], *supra*) and *Mead v Stratton*[1] (87 NY 493 [1882], *supra*), the Court of Appeals considered the legislative intent underlying this statutory liability. Finding that the Legislature's purpose "was the protection of the dependent and helpless" (*Volans v Owen, supra,* p 530), the court limited the remedy created to those situations

---

1. *Volans* (*supra*) involved a father's claim for loss of support from his deceased son and the expenses of medical care. *Mead* (*supra*) involved a widow's claim for injury to her means of support arising from her intoxicated husband's death.

where the plaintiff could show that "his accustomed means of maintenance have been cut off or curtailed, or that he has been reduced to a state of dependence, by being deprived of the support which he had before enjoyed" (*supra,* p 530). Mere diminution of income is not sufficient proof of damage "if the plaintiff, notwithstanding, has adequate means of maintenance, from accumulated capital or property, or his remaining income is sufficient for his support" (*supra,* p 530). In *Mead,* which affirmed a judgment in favor of the plaintiff widow, the court softened its position somewhat, stating that a cause of action for injury to means of support lies "when the party is deprived of the usual means of maintenance, which he or she was accustomed to enjoy previously" (87 NY 493, 496, *supra*). Minor children also have been permitted to recover for injury to means of support arising from the death of a parent by reason of intoxication (*Neu v McKechnie,* 95 NY 632). These cases have never been overruled and are accepted as established jurisprudence (*see,* 3 NY Jur 2d, Alcoholic Beverages, § 130; *but see, Valicenti v Valenze,* 108 AD2d 300).[2]

In *Sharpley v Brown* (43 Hun 374 [1887]), relied upon by the defendants, it was held that postdeath changes in circumstances, in that case the remarriage of the plaintiff 2½ years after her first husband's death, were analogous to "accumulated capital or property" within the meaning of *Volans* and relevant to determining the extent of injury to her means of support (*supra,* p 376). The court stated that "if, shortly after her first husband's death, she had come into the possession of such property as gave her an ample support, it seems to us * * * that this might have been shown upon the trial" (*supra,* p 376). The *Sharpley* court recognized that its holding represented a departure from the rule that "[i]n actions for common-law injuries to the person the damages would not be diminished by the possession of 'accumulated capital and property' by the injured person" but stated that in dram shop cases where "the primary purpose [of the legislation] was the protection of the dependent and helpless * * * it is material to show to what extent the plaintiff is dependent and helpless" (*supra,* p 376).

In our view, the holding in *Sharpley* (*supra*), that evidence of remarriage or other change in financial circumstances occurring

---

2.   Other jurisdictions hold that a plaintiff injured in "means of support" has the right to recover for loss of support without regard to whether she might have had means of her own or an income from a source other than her husband, whether derived from insurance proceeds or any other source (*see, e.g., Deel v Heiligenstein,* 244 Ill 239, 91 NE 429; *Grant v Paluch,* 61 Ill App 2d 247, 210 NE2d 35; *see generally, What Constitutes Injury to Means of Support Within Civil Damage or Dramshop Act,* Ann., 4 ALR3d 1332, § 4).

after the decedent's death is admissible to defeat or diminish a plaintiff's claim of injury to "means of support", is not required by the Court of Appeals rulings in *Volans* and *Mead* (*supra*), has never been followed in any other dram shop case, and represents an unnecessary and unwarranted departure from the well-established rule against allowing a defendant to mitigate damages through proof of compensation from collateral sources. Moreover, the holding undermines the emerging case law on contribution in dram shop actions.

Contrary to defendants' contention that *Sharpley* (*supra*) is dispositive, it is clear that the century-old decision represents one vintage approach only to the question of dram shop liability which has never been approved by the Court of Appeals or implicitly ratified by the Legislature. The *Sharpley* rule was rejected in *Playford v Perich* (2 Misc 2d 170) which held that "there can be no diminution of the penalty in the way of damages fixed [by the Dram Shop Act], by applying in reduction or mitigation thereof, an amount of money fortuitously recovered in an action for wrongful death, either by way of settlement or a verdict therein" (*supra,* p 173; *see,* Comment, *Liability of Tavern Owners Under the New York State Dram Shop Act,* 30 Alb L Rev 271, 280-281 [1966]). While *Sharpley* (*supra*) would permit dram shop defendants to be treated more liberally than common-law tort-feasors and allow them to mitigate damages through proof of postdeath compensation from other sources, *Playford* (*supra*) treated them more harshly by refusing to permit proof of settlement with other tort-feasors, although in non-dram shop cases proof of such payment was then admissible in mitigation of damages (*see, Livant v Livant,* 18 AD2d 383, *lv dismissed* 13 NY2d 894).[3] Thus, despite the holding in *Sharpley,* there was a different approach to the question of damages which not only limited a tavern owner's use of evidence of postdeath compensation to the plaintiff, but in fact permitted the possibility of a double recovery for the same injury through the combination of actions for wrongful death and violation of the Dram Shop Act (Comment, 30 Alb L Rev 271, 280).[4]

---

**3.** CPLR 4533-b (added L 1971, ch 244) modified the *Livant* rule which permitted payments made by one of several tort-feasors to be proved to the jury, by providing that proof in mitigation of damages shall be taken out of the hearing of the jury.

**4.** Although the rationale of *Playford v Perich* (2 Misc 2d 170) was later rejected in *Mitchell v The Shoals, Inc.* (48 Misc 2d 381, *affd on other grounds* 26 AD2d 78, *affd* 19 NY2d 338), which reduced a jury verdict against a dram shop defendant in the amount obtained in a prior settlement with the intoxicated tort-feasor's insurer in accord with the general practice against allowing double recoveries for one injury, the holding in *Mitchell* did not follow *Sharpley*

The disclosure sought by defendants concerning insurance policies, and the other materials which would reflect plaintiffs' financial condition following the death of their husband and father, is clearly directed to the discovery of compensation from "collateral sources". It is a well-established rule that the receipt of total or partial compensation from a source wholly independent of the wrongdoer may not be relied upon to diminish either plaintiff's recovery or defendant's liability (*see, Healy v Rennert,* 9 NY2d 202; 36 NY Jur 2d, Damages, §§ 128, 129). "A tortfeasor cannot avail himself of the benefits of reimbursements which a plaintiff has received as a result of his own good judgment and foresight in insuring himself. Therefore, in actions for personal injury, insurance coverage is not a mitigating factor against the plaintiff's recovery" (36 NY Jur 2d, Damages, § 129, at 222; *see, Szybura v City of Elmira,* 28 AD2d 1154). Here, plaintiffs seek to recover damages arising by reason of the injury to "means of support" occasioned by the death of plaintiffs' husband and father due to the acts of these dram shop defendants. The extent to which these damages may have been ameliorated from sources other than these defendants would not tend to establish that the claimed damage was not actually caused by the dram shop wrongdoer or that their "means of support" injury thereby became lessened or satisfied.

Moreover, allowing proof of collateral compensation to mitigate damages would frustrate public policy designed to insulate a vendee's dependents from a reduction of a dram shop defendant's liability based on contribution from the vendee's estate. In *Bartlett v Grande* (103 AD2d 671) we held that dram shop defendants may not seek contribution from the estate of the vendee where the plaintiffs are dependents of the vendee suing for loss of support on the ground that "[t]o permit the vendors to seek contribution from the estate of the vendee, when it is the vendee's dependents who are seeking recovery, would diminish the plaintiffs' potential recovery and allow the vendor to reduce liability substantially" in contravention of the policies underlying the Dram Shop Act (*supra,* p 672). Our holding there would be considerably undermined if a defendant, although prevented from impleading the vendee's estate, simply had to wait until the proceeds of the estate were distributed to the plaintiff distributees in order to use the assets of the estate to mitigate its damages.

(43 Hun 374) and in fact laid the foundation for recent cases allowing contribution among dram shop defendants and other tort-feasors (*see, e.g., Weinheimer v Hoffman,* 97 AD2d 314, 316-317).

The interpretation of the Dram Shop Act advocated by defendants, that proof of postdeath changes in plaintiffs' financial circumstances are material and necessary in defense of an action for injury to means of support, also is contrary to public policy which encourages the just and speedy determination of litigation (see, CPLR 104). If such evidence were admissible in mitigation of damages defendants would be encouraged to delay and procrastinate in the expectation that some change might occur in plaintiff's circumstances to diminish and perhaps totally negate the proof of damages, certainly not an unrealistic possibility where, as here, the plaintiff is a relatively young widow who might be expected to remarry or to embark on a career.

Finally, although the disclosure sought by defendants is directed to the discovery of insurance proceeds and income from other collateral sources, the theory upon which defendants seek discovery ultimately undermines the modern rule that dram shop defendants and other alleged tort-feasors responsible for the same personal injury or wrongful death may claim contribution among themselves as to compensatory damages awarded to the injured party (CPLR 1401; *Smith v Guli,* 106 AD2d 120; *Herrick v Second Cuthouse,* 100 AD2d 952, *affd* 64 NY2d 692; *Weinheimer v Hoffman,* 97 AD2d 314; *Wood v City of New York,* 39 AD2d 534; *Anderson v Comardo,* 107 Misc 2d 821).[5]

The cases allowing contribution among dram shop violators and other tort-feasors are premised on the theory that, despite the different bases of liability, the defendants are "each * * * subject to liability for damages for the same injury" (*Smith v Guli, supra,* p 123). However, defendants' implicit argument in seeking discovery is that a dram shop defendant and other alleged tort-feasors are not liable for *the same injury* and that a dram shop defendant's liability for injury to plaintiffs' means of support is not measured at the time of decedent's death as it would be for the non-dram shop defendants, but that damages under the Dram Shop Act are measured as of a later time and that plaintiffs' compensation from all other sources may be proved at trial on this issue of injury and damage. Defendants' reasoning presumes that the Dram Shop Act imposes liability only for injury to a plaintiff's means of support *not first recovered* from other sources such as insurance, remarriage, or compensation by way of settlement or judgment from other alleged tort-feasors. The anomalous result of defendant's claim that

**5.** Exemplary damages are in the nature of a penalty and are not subject to contribution (*Smith v Guli,* 106 AD2d 120, 122; *Herrick v Second Cuthouse,* 100 AD2d 952, 953).

proof of such compensation is material to Dram Shop Act liability is to make dram shop defendants secondarily rather than primarily liable for plaintiff's damages based on the conclusion that a dram shop defendant is not liable "for the same injury" as non-dram shop defendants. However, "[i]t is well established that one's liability for violations under the Dram Shop Act can be apportioned among tort-feasors" (*Smith v Guli, supra,* p 123). This right of contribution reflects a consensus that in a dram shop action, the vendor of alcohol and other alleged tort-feasors are "subject to liability for damages for the same personal injury, injury to property or wrongful death" (CPLR 1401) and that the injury to plaintiffs results from the death of their husband and father and the loss of his support must be measured from the time of death without regard to subsequent changes in plaintiffs' financial circumstances.

Accordingly, the order denying defendants' motion to compel discovery and granting plaintiffs a protective order should be affirmed.

DILLON, P. J., DOERR, DENMAN and BOOMER, JJ., concur.

Order unanimously affirmed, with costs.