BLACKBURN, INC., Plaintiff,

v.

HARNISCHFEGER CORPORATION, Defendant.

No. 91–1031–K.

United States District Court, D. Kansas.

Aug. 29, 1991.

Richard Honeyman of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for plaintiff.

Nicholas S. Daily, Depew, Gillen & Rathbun, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

The present case arises from events occurring October 8, 1986 at the Texaco refinery in El Dorado, Kansas. The general background of the case is neither complex nor the subject of dispute. While being lowered to the ground in a manbasket, four workers were dropped 40 feet to the ground. The manbasket was attached to a crane manufactured by defendant Har-

nischfeger Corporation and owned and operated by plaintiff Blackburn, Inc.

On August 9, 1988, the workers filed suit in state court against Blackburn and Texaco, Inc. The plaintiffs in the state action later added claims against Harnischfeger as the manufacturer of the crane, additional Texaco corporations, and the manufacturer of the crane winch. Except for Blackburn, the plaintiffs raised only claims of negligence and strict liability. The plaintiffs' claims against Blackburn, while including claims for negligence and strict liability, also included a claim for willful, gross, and wanton negligence, and a prayer for punitive damages as well as compensatory damages.

On April 7, 1989, the state court upheld the amendment to the complaint by which the workers sought to add their punitive damage claim against Blackburn. The court held, pursuant to K.S.A. 60–3703, that the plaintiffs had demonstrated a "probability" of prevailing on the punitive damages claim at trial. In the pretrial questionnaire, the plaintiffs advanced a prayer for $1 million in punitive damages from Blackburn.

After the dismissal of the claims against the other defendants, only Blackburn and Harnischfeger remained as defendants in the state litigation. For its part, Blackburn advanced in the pretrial questionnaire a claim for negligence in which it alleged that Harnischfeger had "fail[ed] to warn against lifting personnel with the crane."

After the initial pretrial conference, Blackburn settled the claims advanced by the plaintiffs for $660,000.00. At the same time, Blackburn informed the court that it would advance a claim for proportional contribution against Harnischfeger to recover that portion of the settlement amount representing Harnischfeger's alleged fault.

The state court held supplemental pretrial conferences on February 12, February 21, and March 8, 1990. In the course of these pretrial conferences the court ruled that Blackburn could proceed with the claim for proportional contribution. Under proportional contribution, or "comparative implied indemnity" as the action was termed in the leading Kansas case, *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 (1980), a tortfeasor settling the entire claim advanced by the plaintiff is entitled to proportionate contribution from other tortfeasors, with the contribution to be determined by a comparison of the respective fault of the tortfeasors.

However, the state court also ruled that in advancing its proportional contribution claim, Blackburn would have to establish the actual damages suffered by the plaintiffs. The court also denied Blackburn's request to modify its claims against Harnischfeger to product defect and failure to recall or retrofit its cranes.

On Blackburn's motion, the state case was dismissed without prejudice. In granting the motion, however, the court ruled that its rulings, as reflected in the pretrial order, were to be the law of the case, and that the discovery conducted to that time should constitute the entire discovery in the case.

■ Blackburn filed a new action in Sedgwick County District Court on December 19, 1990. The action was removed to this court by defendant Harnischfeger. Blackburn has now moved for a review of the earlier rulings by Judge Royce in the state action. Upon removal of an action, prior rulings by the state court are reviewable "de novo" by the federal court hearing the matter. 14A Wright & Miller, *Federal Practice & Procedure*, § 3738 (1985).

There are three general issues presented by Blackburn's motion to reconsider, and three raised in a separate motion by Harnischfeger to reconsider rulings by the state court. In addition to these issues, Harnischfeger advances an additional discussion relating to punitive damages in its response to Blackburn's motion, which the court finds premature in the context of the present motions to reconsider.

### 1. *Proportionate Contribution*

■ In its arguments in response to Blackburn's motion to reconsider, Harnischfeger generally supports the rulings of the state court. However, it also ad-

vances three subjects which it requests the court to review. The first concerns the very existence of the claim for relief advanced herein by Blackburn. Harnischfeger argues that subsequent to its decision in *Kennedy*, the supreme court has narrowed the action for proportional contribution to the extent that such claims are valid only to the extent the party seeking contribution enjoys an explicit contractual right of indemnity or contribution.

It is certainly correct that since *Kennedy*, the court has shown a general restriction on the claim for proportional contribution recognized in that case. However, the court has yet to entirely disavow the cause of action. The latest case to address the issue, *Teepak, Inc. v. Learned*, 237 Kan. 320, 699 P.2d 35 (1985), recognized that *Kennedy* included "some overly broad language" which might authorize proportional contribution beyond its legitimate scope. In *Teepak*, the court held that a settling tortfeasor could not seek proportional contribution from the plaintiff's physician for malpractice, where the plaintiff had advanced no such claims against the physician.

*Teepak* does not appear to require an explicit contract of contribution or indemnity as a prerequisite to an action for proportional contribution. Rather, the court in *Teepak* evidenced its intent to limit the cause of action to cases in which contribution is sought from other parties "in the chain of distribution." 237 Kan. at 328, 699 P.2d 35. There is no indication in the case that an explicit contract of contribution is required. Rather, the cause of action, at least where the plaintiff has made no direct claims against other parties, is to be limited to " 'other parties in the manufacturer's chain of distribution and supply.' " *Id.*, at 328, 699 P.2d 35 (quoting *Ellis v. Union Pac. RR. Co.*, 231 Kan. 182, 184, 643 P.2d 158, *aff'd on rehearing*, 232 Kan. 194, 653 P.2d 816 (1982)).

In the present case, although Blackburn and Harnischfeger share no explicit contract of indemnification or contribution, they are both in the same chain of distribution of the product allegedly causing the injuries to the state plaintiffs. Under Kansas law as it currently stands, Blackburn has a claim for proportional contribution against Harnischfeger. Accordingly, Harnischfeger's motion for reconsideration of the issue will be denied.

### 2. *Willful and Wanton Conduct*

Defendant Harnischfeger argues in its response to the motion for reconsideration that Blackburn's claim for proportional contribution must fail because contribution is not allowed where the settling tortfeasor was guilty of willful or wanton conduct, or where the settlement reflects the settlement of punitive damages claims. As noted earlier, the plaintiffs in the state action advanced a punitive damages claim against Blackburn only. The plaintiffs contended that Blackburn knew of the dangers of using the crane manbasket to carry workers, yet willfully and wantonly continued the use of the manbasket.

A settling tortfeasor who has engaged in willful or wanton conduct is not entitled to proportional contribution from other, negligent tortfeasors. *Cage v. New York Cent. R. Co.*, 276 F.Supp. 778, 791 (W.D.Pa.), *aff'd*, 386 F.2d 998 (3d Cir.1967); *Bresland v. Ideal Roller & Graphics Co.*, 150 Ill.App.3d 445, 103 Ill.Dec. 513, 522, 501 N.E.2d 830, 839 (1986); *Hardware Mut. Cas. Co. v. Danberry*, 234 Minn. 391, 48 N.W.2d 567, 570 (1951); *Fox v. Mercer*, 109 A.D.2d 59, 489 N.Y.S.2d 792, 799 n. 5 (App.1985); *Jacobs v. General Accid. Fire & Life Ass. Corp.*, 14 Wis.2d 1, 109 N.W.2d 462, 464 (1961). *See Restatement (Second) of Torts* § 866A, comment k (1979). Nor are punitive damages recoverable in an action for contribution. *Pyramid Condominium Ass'n v. Morgan*, 606 F.Supp. 592, 599 (D.Md.1985); *Alabama Power v. Marine Builders*, 475 So.2d 168, 180 (Ala. 1985); *Reimers v. Honeywell, Inc.*, 457 N.W.2d 336, 339 (Iowa 1990); *Exxon Corp. v. Yarema*, 69 Md.App. 124, 516 A.2d 990, 997 (1986), *cert. denied*, 309 Md. 47, 522 A.2d 392 (1987); *State ex rel. Hall v. Cook*, 400 S.W.2d 39, 42 (Mo.1966).

Of course, the mere existence of a *claim* for punitive damages should not deprive

the settling tortfeasor of the opportunity to seek proportional contribution. The claim for punitive damages may turn out to be wholly without merit. If on the other hand, the claim was merited, that party does and should lose the equitable right to impose a share of the costs of settlement on other, less culpable parties. Under *Kennedy*, the party seeking proportional contribution is required "to establish the reasonableness of the amount of the settlement, and that he or she had an actual legal liability he or she could not be expected to successfully resist." 228 Kan. at 461, 618 P.2d 788.

■ In the case of a settling tortfeasor who is alleged by the original plaintiff to have engaged in willful or wanton conduct, the party from whom contribution is sought may demonstrate that the legal liability which it faced and extinguished by settlement rose no higher than negligence. In other words, proof of willful or wanton conduct is a complete defense to the claim for proportional contribution. Of course, this does not resolve the issues presented by Blackburn's motion for reconsideration, though it may form the basis for future dispositive action.

### 3. The Measure of Damages

■ In advancing its proportional contribution claim in the initial state litigation, Blackburn was unable to secure testimony from the physician who treated two of the state plaintiffs. Blackburn argues here that proof of the actual damages suffered by the plaintiff is not required in a proportional contribution case. Instead, it argues, the settlor need only prove that the settlement amount was "reasonable."

In support of its argument, Blackburn marshals a series of cases from other jurisdictions. All of these cases involve other, more traditional forms of indemnification, or arise from the unique nature of the law of the other jurisdiction. Blackburn also relies in particular upon a statement from *Missouri Pac. R. Co. v. Kansas Gas & Elec.*, 862 F.2d 796, 800 (10th Cir.1988), in which the Tenth Circuit observes that

"[p]roof of absolute legal liability or the actual amount of damages is not necessary in the subsequent action for recovery against the indemnitor."

The *Missouri Pacific* case, however, had nothing to do with Kansas law relating to implied proportional contribution between tortfeasors. Rather, the case was decided on the basis of an express contract of indemnity arising from an industrial track agreement required under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., 862 F.2d at 800. *See also Missouri Pac. R. Co. v. Kansas Gas & Electric*, Case No. 86–1020–K, slip op. at 6 (D.Kan. Dec. 16, 1986).

As both parties admit, Kansas law relating to proportional contribution is unique. Although Kansas courts have addressed the issue on several occasions subsequent to the decision in *Kennedy*, none have addressed the issue of whether an action for proportional contribution requires proof of actual damages. The opinion of the court in *Kennedy*, however, implicitly suggests that proof of actual damages is required.

In *Kennedy*, the court held that the tortfeasor seeking proportional contribution had the burden to prove the reasonableness of the settlement:

Reasonable damages if less than the settlement figure should be *judicially determined*. If the reasonable amount of the damages is determined to be more than the settlement figure, all tortfeasors will receive the benefit of the bargain struck by the settling tortfeasor. The apportionment should be accomplished in the action which was pending between plaintiff and defendants when the compromise and settlement is accomplished. If a settlement has been made for all liability arising from the occurrence before a comparative negligence action has been filed, the settling tortfeasor may then and in that event file an action in court to have the degrees of responsibility among joint tortfeasors determined, *damages assessed* and apportionment decreed among them.

228 Kan. at 461, 618 P.2d 788 (emphasis added).

The clear implication of this language is that the reasonableness of the settlement must be judicially determined, and that evidence of actual damages is a necessary element of that process. The court cannot determine the reasonableness of a given settlement in a vacuum, it must have sufficient evidence of the plaintiff's actual damages to determine whether the settlement was reasonable.

Blackburn notes the policy of Kansas in support of settlement of disputes, and argues that the reasonableness of a settlement should be determined by the information available to the settlor at the time of settlement. But it is carrying the policy of favoring settlement too far to allow the settlor an action for proportional contribution without proof that the settlor ultimately would have been liable to a given amount. *Kennedy*, 228 Kan. at 461, 618 P.2d 788 (quoting 41 Am.Jur.2d, *Indemnity* § 33, at 723).

Proof of actual damages is especially important in the present case. As noted earlier, the settlement of a claim for punitive damages is not subject to contribution. Thus, even if Blackburn ultimately demonstrates that it did not engage in willful or wanton conduct, the possibility still exists that the potential for punitive damages played an essential element in Blackburn's decision to settle the case for a given figure. Only by requiring proof of actual damages can it be assured that the settlement figure does not also include settlement of the punitive damages claim. Accordingly, the plaintiff's motion for reconsideration is denied as to this issue.

### 4. *Claims Advanced*

■ There is some dispute between the parties over the extent of the claims which Blackburn may now advance in its claim for proportional contribution against Harnischfeger. In the pretrial questionnaire, Blackburn advanced only one claim of fault against Harnischfeger—that it had failed to adequately warn. Prior to its dismissal of the case, the state court denied Blackburn's requested pretrial order, in which it sought to advance the following claims:

(4) Failing to inform users such as Blackburn that a warning label became available in 1980 for installation in the cab of the crane which prohibited the use of the crane to lift persons.

(5) Failing to institute a recall or retrofit campaign to install the warning label which became available in 1980; and

(6) By selling a defective and unreasonably dangerous crane in that it was not designed to lift persons.

Blackburn now argues that it should be permitted to advance these claims in the present litigation.

■ In trying the present action, Blackburn may advance more specific allegations that fall within the claim of inadequate warning advanced in the initial pretrial stages of the state action. The court concludes that Blackburn may proceed with its failure to warn claim and its strict liability defective product claim. By advancing the present claim for proportional contribution, Blackburn steps into the shoes of the former plaintiffs, who had extended strict liability claims against Harnischfeger. As to the failure to warn claim, claims for recall or retrofit extend beyond the claim as originally articulated in the state court action, and will not be advanced herein. However, the court finds the claim broad enough to allow Blackburn to introduce evidence relating to any subsequent knowledge of similar dangers as a violation of the continuing duty to warn recognized in *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038, *cert. denied*, 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984).

There is, however, a separate issue as to the evidence which may be admitted to show Harnischfeger's alleged knowledge. Evidence of subsequent remedial changes, including the 1980 warnings, are not admissible as discussed in the following section.

■ In its motion for reconsideration, Harnischfeger argues that the court should compare the fault of Texaco Refining and Marketing (the owner of the refinery) and Natkin & Co. (the plaintiffs' employer). The state court denied Harnischfeger leave to compare the fault of these parties in assessing fault in Blackburn's action for

contribution. While it is correct that the fault of these parties was not specifically alleged by Harnischfeger in its pretrial questionnaire, it is equally true that Blackburn's pretrial questionnaire contains no strict liability claims against Harnischfeger.

Yet Blackburn now seeks to assert such claims against Harnischfeger, on the equitable grounds that such claims had been asserted by the plaintiffs. While Harnischfeger advanced no claims against Texaco Refining or Natkin in its pretrial questionnaire, such claims were advanced by Blackburn. The claim for proportional contribution recognized in *Kennedy* is grounded on equitable principles. Just as equity allows Blackburn to assert the strict liability claims advanced against Harnischfeger by the plaintiffs, so equity would also require that Harnischfeger be allowed to compare the fault of parties which Blackburn has contended were causally responsible for the accident.

### 5. *Evidence of Subsequent Remedial Measures*

■■■ Blackburn next seeks a review of the decision of the state court barring the introduction of evidence relating to remedial measures adopted by Harnischfeger subsequent to its sale of the crane in question herein. Specifically, Blackburn contends that it should be allowed to introduce evidence of warning labels issued by Harnischfeger beginning in 1980—after the manufacture and sale of the crane (1978), but prior to the date of the accident herein (1986).

Blackburn argues that such evidence would be admissible under K.S.A. 60–451, since the evidence would relate to remedial measures prior to the accident, even though after the sale of the crane. *See Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585 (1982). If the present case involved claims of negligence only and did not involve a product liability claim, Blackburn might be correct. But such evidence is barred by the existence of strict liability claims against Harnischfeger.

K.S.A. 60–3307 (1990 Supp.) applies specifically to the question of subsequent remedial measure evidence in product liability cases:

(a) In a product liability claim, the following evidence shall not be admissible for any purpose:

(1) Evidence of any advancements or changes in technical or other knowledge or techniques, in design theory or philosophy, in manufacturing or testing knowledge, techniques or processes in labeling, warning of risks or hazards, instructions for the use of such product, if such advancements or changes have been made, learned or placed into common use subsequent to the time the product in issue was designed, formulated, tested, manufactured or sold by the manufacturer; and

(2) evidence of any changes made in the designing, planning, formulating, testing, preparing, manufacturing, packaging, warnings, labeling or instructing for use of, or with regard to, the product in issue, or any similar product, which changes were made *subsequent to the time the product in issue was designed, formulated, tested, manufactured or sold by the manufacturer.*

(b) This section does not require the exclusion of evidence of a subsequent measure if offered to impeach a witness for the manufacturer of seller of a product who has expressly denied the feasibility of such a measure.

(Emphasis added).

In *Siruta v. Hesston Corp.*, 232 Kan. 654, 659 P.2d 799 (1983), the state supreme court held that K.S.A. 60–451 did not bar evidence of subsequent remedial measures in cases alleging strict liability. K.S.A. 60–3307 was adopted in response to the *Siruta* decision. *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1410 n. 2 (10th Cir.1988).

Blackburn, however, contends that K.S.A. 60–3307 was not only adopted in response to *Siruta*, but that it should be given no broader interpretation than that extended to K.S.A. 60–451 prior to *Siruta*. According to Blackburn, the legislature's adoption of K.S.A. 60–3307 should be seen

as nothing further than a clumsy attempt to close the door which *Siruta* recognized as standing open. Thus, Blackburn argues that, as with nonproduct negligence actions under K.S.A. 60–451, remedial measures which are implemented after the sale of a product but prior to the eventual accident should be admissible into evidence.

This interpretation, however, flies in the face of the clear and explicit language of K.S.A. 60–3307, which prohibits the introduction of *any* evidence relating to subsequent remedial measures, including subsequent warnings, at any time after the manufacture or sale of the product. The sole exception under the statute, where the defendant denies the feasibility of a given corrective measure, is not applicable here. Harnischfeger has explicitly admitted the feasibility of subsequent warning.

Blackburn offers a long interpretative history of K.S.A. 60–3307 in support of its argument that the statute really doesn't say what it appears to say. Yet the language of the statute is clear and unambiguous. The statute applies to "product liability" claims, which are further defined in K.S.A. 60–3302(c). The statute forms a part of the Kansas Product Liability Code. It is applicable here, and bars introduction of evidence of any warnings extended after 1978, the date the crane was sold.

In its reply, Blackburn argues only that it is seeking to introduce the evidence of subsequent warnings only to demonstrate the extent of Harnischfeger's knowledge of similar dangers. K.S.A. 60–3307, however, prohibits the use of such evidence "for any purpose" other than to controvert a claim of infeasibility. As noted earlier, feasibility is not in issue here. Blackburn's application to introduce the evidence for the purpose of knowledge is precluded by the statute.

Of course, in supporting its claim of a violation of the continuing duty to warn, Blackburn is entitled to introduce evidence that Harnischfeger knew prior to the accident of the dangers of using its cranes to transport men. But it must do so through direct evidence, rather than trying to create the inference of such knowledge through the introduction of evidence relating to subsequent remedial measures.

### 6. *Knowles v. Harnischfeger*

 Finally, in seeking to demonstrate Harnischfeger's alleged knowledge of similar dangers, and of the resulting violation of its continuing duty to warn, Blackburn seeks to introduce into evidence the opinion in *Knowles v. Harnischfeger*, 36 Wash. App. 317, 674 P.2d 200 (Wash.App.1983). Blackburn argues that the opinion demonstrates Harnischfeger's knowledge of the dangers presented herein.

The state court refused to accept the opinion into evidence, and this court will, except for use for a limited purpose, follow that refusal. The *Knowles* case involved injuries to a worker riding in a manbasket carried by a Harnischfeger crane. The similarities end there. The *Knowles* case involved a different type of crane than the one involved here. Moreover, the allegedly defective portion of the crane's mechanism is also different. In *Knowles*, the defect which allegedly caused the manbasket carrying the plaintiff to drop was a faulty hydraulic system. In the present case, the accident allegedly was caused not by faulty hydraulics, but by a defective clutch.

Nor is the *Knowles* case admissible to prove notice of a defect on the part of Harnischfeger's design or construction of the crane. Harnischfeger has never denied it was aware of the dangers posed by using its cranes to carry men. Accordingly, the evidence is not admissible to prove notice. *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100 (6th Cir.1989).

 However, the evidence is admissible to show notice of the inadequacy of the warnings used by Harnischfeger prior to 1980. Even though the accident may have arisen under different circumstances, they nonetheless are probative of Harnischfeger's knowledge of the adequacy of its warnings not to carry men in manbaskets attached to its cranes. In this respect, Harnischfeger relies on *Rye v. Black & Decker* again; yet, as the Sixth Circuit emphasized in that case, it was "important

to note that these prior incidents were not offered in support of appellant's failure to warn claim." 889 F.2d at 103. The Sixth Circuit based its decision upon the limited use of the prior incidents to establish notice of a defective design.

Here, however, one of the issues before the court is whether the type of warning Harnischfeger installed on its cranes prior to 1980 was adequate, and whether Harnischfeger had notice the warnings might be inadequate. The *Knowles* case is therefore admissible on the limited issue of proving notice of inadequate warning under the continuing duty to warn claim.

### 7. *Hearsay Evidence*

Finally, Harnischfeger seeks a reconsideration of the admissibility of certain allegedly hearsay testimony. Harnischfeger seeks to introduce testimony indicating that it was "common knowledge" among Blackburn employees on the work site that the crane had dropped other loads. The state court ruled this evidence inadmissible hearsay. Harnischfeger now argues that the evidence should be admissible, not for the purpose of proving the truth of the matter (that the crane was dropping other loads prior to the accident in question here) but for the general purpose of showing notice to Blackburn that the crane should not be used for carrying workers.

The court concludes that it is unnecessary to address the propriety of individual evidentiary rulings at the present time. Such rulings will be more appropriate and expedient when the parties submit their respective motions *in limine* prior to trial.

IT IS ACCORDINGLY ORDERED this 29th day of August, 1991, that the motions for reconsideration of the plaintiff (Dkt. No. 6) and defendant (Dkt. No. 9) are granted in part and denied in part, as set forth more fully herein.