No. 57,149

TEEPAK, INCORPORATED, *Appellee,* v. GEORGE R. LEARNED, *Appellant.*

(699 P.2d 35)

Opinion filed May 10, 1985.

*Mark A. Buck,* of Topeka, argued the cause, and *Thomas E. Wright* and *Zackery E. Reynolds,* of Fisher, Ochs, Heck and Wright, P.A., of Topeka, were on the briefs for appellant.

*Bryan E. Nelson,* of Alder & Nelson, of Overland Park, argued the cause, and *Ronald W. Nelson,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an action wherein plaintiff Teepak,

Inc., seeks recovery from defendant George R. Learned for moneys paid by Teepak to Carl and Violet Baise in settlement of an action brought by the Baises against Teepak in the United States District Court for the Western District of Missouri. Learned filed motions to dismiss the action and for summary judgment predicated upon two grounds—that the statute of limitations had run, and that, as a matter of law, Teepak had failed to state a valid cause of action against him. The district court denied both motions, and the matter is before us on Learned's interlocutory appeal therefrom.

The pertinent facts may be summarized as follows. On November 30, 1979, Carl Baise, a resident of Lawrence, purchased a package of Alewel's Summer Sausage. The following day Mr. Baise ate some of the sausage and subsequently became ill as the result of a sausage casing obstructing his small intestine. Ultimately, Dr. George Learned performed surgery upon Baise, excising two-thirds of the patient's small intestine. Dr. Learned's treatment of Baise ended in January, 1980.

The sausage had been made by Alewel's Incorporated, a Missouri corporation. The casing for the sausage had been made by Teepak, Inc., an Illinois corporation. In September of 1981 Baise and his wife filed an action against both corporations seeking recovery for his injuries and medical treatment. The action was filed in the United States District Court for the Western District of Missouri. Federal jurisdiction was invoked on the basis of diversity of citizenship. The Baises at no time ever asserted a cause of action against Learned.

On July 29, 1983, Teepak filed a third-party complaint against Learned in the federal case seeking "indemnity or subrogation" for sums Teepak might have to pay the Baises. On October 6, 1983, Teepak filed this action in the Douglas County District Court seeking indemnification from Learned for any of Teepak's liability to the Baises which "is chargeable and attributable to the negligence of Dr. Learned."

Teepak and Alewel's (as well as their respective insurance carriers) entered into a structured settlement agreement with the Baises. The settlement was agreed upon on or about November 1, 1983, and subsequently executed by the parties thereto in December of 1983 and January of 1984. The total settlement was approximately $375,000.00. The federal case was dismissed by

stipulation on January 27, 1984. At the time of the dismissal, Learned had been served with the third-party complaint but had not filed an answer. The third-party complaint was dismissed without prejudice at the time the plaintiff's petition was dismissed.

Teepak, after the Baise settlement, proceeded with its Kansas action against Learned. Learned filed motions seeking dismissal and summary judgment on the grounds the action was barred by virtue of: (1) the statute of limitations having expired on any action by the Baises against him predicated upon medical malpractice prior to assertion of any claim against him by Teepak; and (2) the failure of Teepak to assert a valid claim against him under Kansas law. The district court denied both motions and the matter is before us on Learned's interlocutory appeal therefrom.

The basic question before us may be stated in general terms as follows: Whether or not, under the principles of comparative negligence, a defendant tortfeasor causing the initial injury to the plaintiff may settle with the injured plaintiff and then seek indemnification, or contribution, in a separate action, from another person whom the tortfeasor contends is a "subsequent" tortfeasor causing part of the injured party's damages even though the injured party never asserted a claim against the "subsequent" tortfeasor.

In specific terms the question may be stated as follows: Whether or not the Kansas law of comparative negligence permits a tortfeasor causing physical injury to a person to settle with the injured person and then proceed against a physician whom the tortfeasor (but not the injured party) claims added to the injured party's damages through negligent treatment of the injured party. If this question is answered affirmatively, then a second question arises. Is the cause of action barred if the tortfeasor does not bring the action against the physician until after the statute of limitations has expired which governs the period the injured party could have brought a malpractice action against the physician?

In 1974 the legislature enacted K.S.A. 60-258a, which made the concept of comparative negligence the law of Kansas. The statute provides:

"(a) The contributory negligence of any party in a civil action shall not bar such

party or said party's legal representative from recovering damages for negligence resulting in death, personal injury or property damage, if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made, but the award of damages to any party in such action shall be diminished in proportion to the amount of negligence attributed to such party. If any such party is claiming damages for a decedent's wrongful death, the negligence of the decedent, if any, shall be imputed to such party.

"(b) Where the comparative negligence of the parties in any such action is an issue, the jury shall return special verdicts, or in the absence of a jury, the court shall make special findings, determining the percentage of negligence attributable to each of the parties, and determining the total amount of damages sustained by each of the claimants, and the entry of judgment shall be made by the court. No general verdict shall be returned by the jury.

"(c) On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury or property damage, any other person whose causal negligence is claimed to have contributed to such death, personal injury or property damage shall be joined as an additional party to the action.

"(d) Where the comparative negligence of the parties in any action is an issue and recovery is allowed against more than one party, each such party shall be liable for that portion of the total dollar amount awarded as damages to any claimant in the proportion that the amount of his or her causal negligence bears to the amount of the causal negligence attributed to all parties against whom such recovery is allowed.

"(e) The provisions of this section shall be applicable to actions pursuant to this chapter and to actions commenced pursuant to the code of civil procedure for limited actions."

Since 1974 Kansas appellate courts have been repeatedly called upon to determine the purpose and intent of K.S.A. 60-258a and the effect of the statute's enactment upon existing Kansas case law. The evolution of the law of comparative negligence in Kansas is the result of each case utilizing prior case law as the foundation upon which determination of the issues presented must rest. This same approach will be followed herein.

We shall first consider whether or not a cause of action based upon contribution exists herein. *Brown v. Keill*, 224 Kan. 195, Syl. ¶¶ 5, 6, 580 P.2d 867 (1978), is particularly significant on this aspect of the issue before us and must be cited at some length. Preliminarily, the following observation made in *Brown* needs to be noted:

"This statute [K.S.A. 60-258a] is more detailed than most comparative negligence statutes in other states and after reviewing the court decisions in other states we find they are of limited assistance. Although some subsections of the Kansas statute have direct counterparts in other states, no other state has the exact combination of provisions as does Kansas. So far as our research has disclosed no state has the provision for joining additional parties on motion of any party

against whom a claim is asserted for negligence. See subsection (c)." 224 Kan. at 199.

In discussing the prior law relative to contribution among tortfeasors, this court in *Brown* stated:

"[U]nder the Kansas law as it existed prior to statutory comparative negligence a plaintiff could choose his tortfeasor and a defendant had no right to bring in another joint tortfeasor to plaintiff's action. However, if plaintiff sued and recovered a judgment against two tortfeasors plaintiff could proceed to collect the judgment from either judgment debtor. When one judgment debtor had satisfied the entire judgment he could then recover one-half of the amount paid from the other judgment debtor. The effect of these prior holdings was to make each defendant jointly and severally liable for all of plaintiff's damage regardless of whether others contributed to cause such injuries. The right of contribution between judgment debtors in such case was on a fifty-fifty basis. Plaintiff controlled his own lawsuit and could collect a judgment from any judgment debtor he chose. The inability of any judgment debtor to pay his half of the judgment would concern only the judgment debtor who satisfied the judgment and then sought contribution." 224 Kan. at 198.

In determining the legislative intent in the adoption of K.S.A. 60-258a, this court in·*Brown* stated:

"The perceived purpose in adopting K.S.A. 60-258a is fairly clear. The legislature intended to equate recovery and duty to pay to degree of fault. Of necessity, this involved a change of both the doctrine of contributory negligence and of joint and several liability. There is nothing inherently fair about a defendant who is 10% at fault paying 100% of the loss, and there is no social policy that should compel defendants to pay more than their fair share of the loss. Plaintiffs now take the parties as they find them. If one of the parties at fault happens to be a spouse or a governmental agency and if by reason of some competing social policy the plaintiff cannot receive payment for his injuries from ·the spouse or agency, there is no compelling social policy which requires the codefendant to pay more than his fair share of the loss. The same is true if one of the defendants is wealthy and the other is not. Previously, when the plaintiff had to be totally without negligence to recover and the defendants had to be merely negligent to incur an obligation to pay, an argument could be made which justified putting the burden of seeking contribution on the defendants. Such an argument is no longer compelling because of the purpose and intent behind the adoption of the comparative negligence statute.

"It appears more reasonable for the legislature to have intended to relate duty to pay to the degree of fault. Any other interpretation of K.S.A. 60-258a(d) destroys the fundamental conceptual basis for the abandonment of the contributory negligence rule and makes meaningless the enactment of subsection (d). If it were not the intention of the legislature to abolish joint and several liability by adopting subsection (d) that subsection would have little or no purpose, because the first two sections of the statute standing alone could have accomplished the legislative purpose urged by the appellant.

"Numerous examples of unfairness have been cited by both parties in this case

to support their respective positions. The law governing tort liability will never be a panacea. There have been occasions in the past when the bar of contributory negligence and the concept of joint and several liability resulted in inequities. There will continue to be occasions under the present comparative negligence statute where unfairness will result. Having considered the arguments in light of the statute, *we hold under the provisions of K.S.A. 60-258a the concept of joint and several liability between joint tortfeasors previously existing in this state no longer applies in comparative negligence actions. The individual liability of each defendant for payment of damages will be based on proportionate fault, and contribution among joint judgment debtors is no longer required in such cases.*" 224 Kan. at 203-04. (Emphasis supplied.)

This court in *Brown* further held:

[W]e conclude the intent and purpose of the legislature in adopting K.S.A. 60-258a was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault." 224 Kan. at 207.

Teepak argues that the abolition of both joint and several liability and the right of contribution among tortfeasors as determined in *Brown* is limited to *joint* tortfeasors and does not apply to successive tortfeasors as in the case before us. In support thereof, Teepak shows that existing Kansas case law imposes liability on the tortfeasor causing the initial injury for any additional injury to the injured party arising from medical malpractice occurring in the treatment of the original injury. *Fieser v. St. Francis Hospital & School of Nursing, Inc.,* 212 Kan. 35, 510 P.2d 145 (1973), is a case wherein this principle is extensively discussed and applied.

We see no valid reason for limiting the holding in *Brown* solely to the *joint* tortfeasor situation. The concept of contribution among tortfeasors arises from equitable origins—a person partially causing injury to another but paying for all of the injury should be entitled to contribution thereon from another person causing part of the injury. The equitable need for contribution vanishes when one tortfeasor has the statutory right to bring other tortfeasors into the action as defendants and have fault (and liability) proportionally determined. The injured person herein, Carl Baise, sued Teepak and Alewel's seeking recovery for the injuries received from eating the sausage. Teepak claims part of those injuries arose from medical malpractice. Teepak could have brought Dr. Learned into the action as a party whose negligence should be compared with that of Teepak and

Alewel's. Instead, Teepak brought Learned in under third-party practice, an indemnification procedure.

*Ellis v Union Pacific R.R. Co.*, 231 Kan. 182, 643 P.2d 158 *aff'd on rehearing* 232 Kan. 194, 653 P.2d 816 (1982), is another case of special significance to this issue. *Ellis* arose from an automobile-train collision wherein three occupants of the automobile were killed and the driver was injured. Suit was filed against Union Pacific and the railroad brought in other parties for comparison of fault purposes. The plaintiffs never asserted a claim against these other parties. Union Pacific settled the entire claim and then sought contribution from the other parties it had brought into the action for comparison of fault purposes. In *Ellis* we held:

"The settling defendant cannot, however, create liability where there is none. One defendant in a comparative negligence action cannot settle a claim on behalf of a party against whom the plaintiff could not recover and then seek contribution from that party in proportion to the percentage of causal negligence attributable to that party. The plaintiff may choose to forego any recovery from other tortfeasors. In that event, a settling defendant has no claim to settle but his own." 231 Kan. at 192.

The corresponding syllabus in *Ellis* states:

"A named defendant in a comparative negligence action cannot settle a claim on behalf of a party or parties against whom the plaintiff has not sought recovery and then seek contribution from those parties in proportion to the percentage of causal negligence attributable to those parties." 231 Kan. 182, Syl. ¶ 3.

We conclude Teepak has no cause of action against Learned predicated upon contribution.

We turn now to whether Teepak has stated a cause of action against Learned based upon indemnification.

The starting point for the consideration of this question must be the rather controversial case of *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 (1980). *Kennedy*, in the posture the case came before us, was a dispute among various entities in the chain of distribution of a herbicide which caused injury to property of the plaintiffs. The plaintiffs sued the City and its employee who applied the herbicide. The City, through third-party practice procedure, sought indemnification from its supplier, and ultimately other parties in the chain of distribution were likewise brought in for indemnification purposes. The trial court dismissed the third-party petitions and an appeal was

taken. While the appeal was pending the defendant City settled with the plaintiffs.

To aid in understanding the holding of *Kennedy,* all syllabi are reproduced as follows:

"Under the doctrine of strict liability the liability of a manufacturer and those in the chain of distribution extends to those individuals to whom injury from a defective product may reasonably be foreseen, and then only in those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable it may be used." Syl. ¶ 1.

"A trial court is given broad discretionary power under K.S.A. 60-215 to allow amendment of pleadings, and amendments should be permitted in the interest of justice." Syl. ¶ 2.

"The concept of joint and several liability between joint tortfeasors which previously existed in this state no longer applies in comparative negligence actions. The individual liability of each defendant for payment of damages is to be based on proportionate fault, and contribution among joint judgment debtors is no longer needed in such cases because separate individual judgments are to be rendered. *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978)." Syl. ¶ 3.

"The doctrine of comparative fault or comparative causation should be and is applicable to both strict liability claims and to those claims based on implied warranty in products liability cases." Syl. ¶ 4.

"The statutory adoption of comparative negligence in Kansas has the effect of abrogating the concept of indemnification based on the dichotomy of active/passive negligence as conceptualized in *Russell v. Community Hospital Association, Inc.,* 199 Kan. 251, 428 P.2d 783 (1967)." Syl. ¶ 5.

"In actions where comparative negligence is in issue the court deals in percentages of causal responsibility, and distinctions between primary, secondary, active and passive negligence lose their previous identities. The nature of misconduct in such cases is to be expressed on the basis of degrees of comparative fault or causation, and the 'all or nothing' concepts are swept aside." Syl. ¶ 6.

"Courts have always taken the position that compromise and settlement of disputes between parties should be favored in the law in the absence of fraud or bad faith." Syl. ¶ 7.

"There is no reason in a comparative liability jurisdiction to hold a defendant, the proposed indemnitor, liable for damages in disproportion to his causal fault. Similarly, there is no reason to deny another defendant, the proposed indemnitee, a right of liability reduction when his fault, although minimal in terms of causal involvement, may nevertheless be characterized as 'active.' " Syl. ¶ 8.

"We conclude that now is the proper time under the facts of this case to adopt a form of comparative implied indemnity between joint tortfeasors. When, as here, a settlement for plaintiffs' entire injuries or damages has been made by one tortfeasor during the pendency of a comparative negligence action and a release of all liability has been given by plaintiffs to all who may have contributed to said damages, apportionment of responsibility can then be pursued in the action among the tortfeasors." Syl. ¶ 9.

"In any action where apportionment of responsibility is sought by a settling tortfeasor, he or she will be required to establish the reasonableness of the amount of the settlement and that he or she had an actual legal liability for the

injuries and damage which he or she should not be expected to successfully resist." Syl. ¶ 10.

The difficulties that have arisen from the *Kennedy* decision primarily involve some overly broad language utilized therein. Indemnification among those in the chain of distribution arises out of their contractual relationship with each other and *Kennedy* must be read in the context of its factual situation. The use of the term "joint tortfeasors" in Syl. ¶ 9 of *Kennedy*, an indemnity case, is unfortunate and has led to considerable confusion.

In *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182 (the basic facts of the case having been previously stated herein), this court stated:

"Union Pacific appeals from that dismissal, arguing that it has preserved a right to comparative implied indemnity as announced by this court in *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 (1980), and asserting that this case involves a question with respect to the procedure to be followed in pursuing a claim for comparative implied indemnity." 231 Kan. at 184.

The court in *Ellis* then made the significant comment:

"We digress briefly to comment upon the use of the term 'comparative implied indemnity.' In the *Kennedy* case, the third party petitions filed below sought indemnification against other parties in the manufacturer's chain of distribution and supply. The relief granted by this court, in light of the facts in the *Kennedy* case and the interplay of principles of comparative negligence, indemnity, and settlement, was termed an action for comparative implied indemnity. We recognize the term is not appropriate to the case at bar in which post-settlement contribution, rather than indemnity, is at issue. However, while proportional contribution is a more appropriate term in the instant case, we have no desire to belabor that distinction and cloud the issue before us which concerns procedural prerequisites to *any* claim for post-settlement proportional payment, regardless of the nomenclature used. We leave to future opinions the development of appropriate terminology as well as examination of the scope of causes of action for post-settlement proportional payment." 231 Kan. at 184.

In the case before us, Teepak (like the railroad in *Ellis*) is seeking post-settlement contribution from a party against whom the injured party never sought recovery but whom it claims contributed to the injured party's damages. As we held in *Ellis* this constitutes an action seeking post-settlement contribution rather than indemnity and the holding of *Kennedy* relative to "comparative implied indemnity" is inapplicable. We conclude the trial court erred in holding Teepak had a valid cause of action against Learned predicated upon indemnification.

Before concluding, it should be noted that the result reached

herein is wholly consistent with the philosophy, as expressed in *Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368, 634 P.2d 1127 (1981), that comparative fault should be determined in one action. It is true *Albertson* spoke of determining the comparative fault of "all of the parties to the occurrence" in one action and, in the case before us, Teepak and Learned were not, strictly speaking, parties to the same occurrence. However, the initial injury caused by Teepak required medical attention which Teepak contends was done negligently and increased the injured party's damages. The injured party filed suit seeking recovery for all of his damages against the two corporations he contended were responsible therefor. The two corporations settled the entire claim and, under the rule of *Ellis,* previously cited, cannot attempt to impose liability where there is none. A settling party in such circumstances has no claim to settle but his own.

We have previously held that fault based upon such diverse matters as a highway defect (*Wilson v. Probst,* 224 Kan. 459, 581 P.2d 380 [1978]), and an automobile design defect (*Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368), must be determined in one action and compared with fault based on such matters as traffic code violations and automobile drivers. It would be wholly inconsistent therefore to permit multiple litigation under the facts of the case herein.

By virtue of the result reached herein on the first issue, the question of whether the action is barred by Teepak's failure to institute an action against Learned prior to the running of the statute of limitations relative to medical malpractice is rendered moot.

The orders of the district court denying defendant's motion to dismiss and for summary judgment are reversed and the case is remanded with directions to enter judgment in favor of the defendant.

LOCKETT, J., concurring.