(165 P.3d 1060)
No. 96,784

DODGE CITY IMPLEMENT, INC. and JUSTIN L. SLATTERY, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BARBER, and THE MOORE TOWNSHIP, BARBER COUNTY, KANSAS, *Appellees*.

Opinion filed August 24, 2007.

*Mark A. Buck* and *Clinton W. Lee*, of Fairchild & Buck, P.A., of Lawrence, for appellants.

*Stephen M. Kerwick*, of Foulston Siefkin, LLP, of Wichita, for appellee Board of County Commissioners of Barber County.

*Edward L. Keeley*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellee Moore Township.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

CAPLINGER, J.: This action emanated from the collision of a freight train owned by Burlington Northern and Santa Fe Railway Company (BNSF) and a truck owned by Dodge City Implement,

Inc. (DCI) and driven by Justin Slattery. BNSF filed an action in federal court for damages sustained to its engine, train and cargo during the collision. After BNSF eventually settled its claims with DCI, DCI brought a new action in Barber County District Court against Moore Township and the Board of County Commissioners of the County of Barber (Barber County) seeking recovery under theories of negligence, implied indemnity, and comparative implied indemnity, based upon alleged negligence in the construction and maintenance of the railroad grade crossing. DCI appeals from the district court's dismissal of its petition for failure to state a claim and failure to provide notice to Moore Township and Barber County pursuant to K.S.A. 2006 Supp. 12-105b.

*Factual and procedural background*

The facts of this case are undisputed. On September 8, 2003, a freight train operated by BNSF struck a truck owned by DCI and driven by its employee, Justin Slattery, at a railroad grade crossing in Moore Township in Barber County. The train derailed causing extensive damage to the engine, train, and cargo, as well as damage to DCI's truck and cargo, and personal injuries to Slattery.

On February 4, 2004, BNSF filed a complaint against DCI and Slattery in the United States District Court for the District of Kansas. Moore Township and Barber County were never joined as defendants in this federal action.

In April 2004, DCI paid BNSF $3 million in full settlement of all claims arising from the accident. The payment represented settlement "of all of [BNSF]'s damages against all parties and persons." However, DCI and Slattery expressly reserved "the right to make a claim against or sue Barber County, Kansas, and/or any person or entity, other than [BNSF] . . . for comparative implied indemnity and any other cause of action that may exist under Kansas law." The next day, BNSF dismissed with prejudice its claims against DCI and Slattery in federal court.

On June 6, 2005, DCI and Slattery filed a petition for damages against Barber County in Barber County District Court; they later added Moore Township as a defendant. DCI and Slattery sought recovery in the amount of $3,092,313.34, representing reimburse-

ment in the amount of the settlement with BNSF as well as their own personal damages. DCI and Slattery asserted claims based on negligence, negligence per se, implied indemnity, and comparative implied indemnity arising out of the negligent construction and maintenance of the grade crossing. Prior to commencing this action, DCI and Slattery sent both Moore Township and Barber County notice of a potential claim purporting to comply with the notice provisions of K.S.A. 2006 Supp. 12-105b.

Both Moore Township and Barber County filed motions to dismiss DCI's petition for failure to state a claim, arguing DCI's claim for comparative implied indemnity was unavailable because neither Moore Township nor Barber County was joined as a defendant in the federal action filed by BNSF. They also argued DCI failed to substantially comply with the notice provisions of K.S.A. 2006 Supp. 12-105b.

Following a hearing, the district dismissed with prejudice all of the claims of DCI and Slattery. The district court reasoned DCI could not maintain its comparative implied indemnity claim because neither Moore Township nor Barber County was named as a defendant or joined in the underlying lawsuit pursuant to K.S.A. 60-258a. Further, the court concluded DCI and Slattery could not maintain an action for negligence or negligence per se because they failed to indicate the amount of monetary damages sought and thus did not substantially comply with the notice provisions of K.S.A. 2006 Supp. 12-105b.

DCI timely appeals the district court's rulings granting the motions to dismiss.

*Issues on appeal*

DCI makes two distinct arguments on appeal. First, with respect to its claim of comparative implied indemnity, DCI argues the district court erred in finding DCI was prohibited by controlling Kansas precedent from seeking reimbursement from Barber County and Moore Township for its claim emanating from DCI's voluntary settlement with BNSF.

Second, DCI argues the district court erred in dismissing its action for individual injuries and damages, which amounted to the

remaining $92,313.34 of the overall prayer. DCI claims the district court erroneously interpreted K.S.A. 12-105b in finding this claim for direct damages was barred by DCI's failure to substantially comply with that statute.

### Standard of review

In reviewing a district court's grant of a motion to dismiss for failure to state a claim, we must accept the facts alleged by plaintiff as true, along with any inferences that can be reasonably drawn therefrom. We must then decide whether those facts and inferences state a claim based on plaintiff's theory or any other possible theory. *Jones v. State*, 279 Kan. 364, 366, 109 P.3d 1166 (2005). However, when a motion to dismiss raises an issue concerning the legal sufficiency of a claim and the district court receives and considers matters outside the pleadings, as it did here, the motion is treated as one for summary judgment and disposed of according to K.S.A. 60-256. *Davidson v. Denning*, 259 Kan. 659, Syl. ¶ 1, 914 P.2d 936 (1996).

Where there is no factual dispute, our review of an order regarding summary judgment is de novo. *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004).

### Dismissal of comparative implied indemnity claim

First, we must determine whether the district court appropriately concluded that DCI's voluntary settlement of all BNSF's claims relating to the grade crossing accident prohibited DCI from then seeking to collect payment on a theory of "comparative implied indemnity" from Barber County and Moore Township, neither of which were parties to the federal court action, and neither of which participated in the settlement. In resolving this issue, we will closely analyze several cases decided by our Supreme Court: *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 (1980); *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, 643 P.2d 158 (1982); and *Teepak, Inc. v. Learned*, 237 Kan. 320, 321, 699 P.2d 35 (1985).

#### Kennedy v. City of Sawyer

In urging us to find the district court erred, DCI relies primarily upon *Kennedy*, 228 Kan. 439. There, the plaintiffs brought claims

against the city and a city councilman after the plaintiff's cattle died of eating weeds sprayed with herbicide by the councilman on behalf of the city. The city filed a third-party petition pursuant to K.S.A. 60-214(a) for indemnity against the manufacturer of the herbicide, who in turn filed a claim for indemnity under the same statute against the packager of the herbicide. 228 Kan. at 442. The plaintiffs, however, never sought relief from the manufacturer or packager. The district court granted the third-party defendants' motions for summary judgment, and the plaintiffs appealed. While the appeal was pending, the city settled the entire claim with the plaintiffs and obtained a release of all other potentially responsible parties. 228 Kan. at 444-45.

The Supreme Court in *Kennedy* reversed the dismissal and allowed the city's indemnity action as "a form of comparative implied indemnity." 228 Kan. 440, Syl. ¶ 9. The court held:

"We conclude that now is the proper time under the facts of this case to adopt a form of comparative implied indemnity between joint tortfeasors. When, as here, a settlement for plaintiffs' entire injuries or damages has been made by one tortfeasor during the pendency of a comparative negligence action and a release of all liability has been given by plaintiffs to all who may have contributed to said damages, apportionment of responsibility can then be pursued in the action among the tortfeasors." 228 Kan. 440, Syl. ¶ 9.

DCI suggests the facts of this case mirror those in *Kennedy*. It points out that BNSF and DCI reached a settlement for BNSF's entire damages, and BNSF released all parties from liability. DCI then proceeded in a separate action against the "tortfeasors" who contributed to BNSF's damages, *i.e.*, Barber County and Moore Township, for apportionment of responsibility.

### *Ellis v. Union Pacific R.R. Co.*

Barber County and Moore Township respond that this case is not controlled by *Kennedy*, but rather by *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, wherein they assert the Kansas Supreme Court expressly disapproved application of *Kennedy* to circumstances similar to those in this case.

The facts in *Ellis* are very similar to those here. In *Ellis*, the plaintiff sued the railroad for damages arising out of a collision

between the plaintiff's vehicle and a train. 231 Kan. at 183. Pursuant to K.S.A. 60-258a(c), the railroad joined several governmental entities, including two townships and a county, but the plaintiff did not assert any claims against these entities. The railroad then settled the case with the plaintiff and obtained an agreement from the plaintiff that included a release of the governmental entities and a promise by plaintiff to cooperate with the railroad in the prosecution of any claim for indemnity or contribution. After approval of the settlement, the railroad attempted to pursue a claim in the same action for comparative implied indemnity against the governmental entities. 231 Kan. at 183. The Supreme Court, however, upheld dismissal of the railroad's claim for implied indemnity or contribution, holding that no cause of action was available. 231 Kan. at 191-92.

The court in *Ellis* distinguished *Kennedy*, noting that while *Kennedy* involved joinder of defendants under K.S.A. 60-214, the case before it concerned joinder of additional defendants pursuant to K.S.A. 60-258a. 231 Kan. at 187-89. The court held that because no party sought recovery against the governmental entities, the railroad could not subsequently recover from the governmental entities even if they were at fault. The court reasoned that had the governmental entities been subject to liability, they might have been subject to contribution. 231 Kan. at 190. Further, the *Ellis* court noted that *Kennedy* involved "indemnification against other parties in the manufacturer's chain of distribution and supply." *Ellis*, 231 Kan. at 184.

Significantly, the *Ellis* court specifically limited the language in *Kennedy* which DCI relies upon here. The court stated:

"Broad language in the *Kennedy* opinion, 228 Kan. at 460-61, outlining the defendant's role in bringing 'into the action all tortfeasors against whom comparative liability through indemnity is sought' goes far beyond the facts of the *Kennedy* case and is disapproved to the extent that it suggests a defendant can enlarge the liability of other defendants." 231 Kan. at 191.

Further, the court in *Ellis* clarified the nature of the cause of action which the settling defendants might have had if they had met the "procedural prerequisites":

"The relief granted by this court, in light of the facts in the *Kennedy* case and the interplay of principles of comparative negligence, indemnity, and settlement, was termed an action for comparative implied indemnity. We recognize the term is not appropriate to the case at bar in which post-settlement contribution, rather than indemnity, is at issue. However, while proportional contribution is a more appropriate term in the instant case, we have no desire to belabor that distinction and cloud the issue before us which concerns procedural prerequisites to *any* claim for post-settlement proportional payment, regardless of the nomenclature used." 231 Kan. at 184.

Here, as in *Ellis*, DCI is actually seeking proportional post-settlement contribution rather than comparative implied indemnity from the governmental entities. And, like *Ellis*, regardless of the nomenclature used, it appears the procedural prerequisites to post-settlement proportional payment were not met as Barber County and Moore Township were not subject to liability in the previous action. In fact, this case arguably presents a stronger case for denial of post-settlement contribution than *Ellis*, as DCI did not seek to join the governmental entities as defendants pursuant to K.S.A. 60-258a, as did the railroad in *Ellis*. Moreover, DCI did not allege in its answer in the federal case that anyone other than BNSF was at fault for the accident.

DCI attempts to distinguish *Ellis* by suggesting that *Ellis* turned upon whether the plaintiff in the original action could have brought an action against the governmental entities at the time the railroad settled the claims with the plaintiff. DCI points out that in *Ellis*, the statute of limitations on the plaintiff's claims against the governmental entities had already expired at the time of settlement. Here, DCI settled with the plaintiff, BNSF, *before* BNSF's statute of limitations for claims against the governmental entities had expired.

However, DCI neglects to point out that the court in *Ellis* expressly rejected this argument:

"In the case at bar the defendants against whom contribution is now sought were not subject to actual liability since the plaintiffs had made no claim against them. Union Pacific argues the potential for recovery existed because of the possibility of amendment of the plaintiff's petition to state a claim under the relation back provisions of K.S.A 60-215 despite the running of the statute of limitations under K.S.A. 60-513. We need not reach that issue because plaintiffs did not attempt to

amend their petitions either before or after the running of the statute of limitations." 231 Kan. at 191-92.

Here, BNSF did not attempt to amend its petition in the federal action to make a claim against the governmental entities before settling with the original defendant. The determinative factor here, as it was in *Ellis*, is not whether the statute of limitations had run at the time of settlement but whether the governmental entities were subject to liability in the prior action.

### *Teepak v. Learned*

Barber County and Moore Township point out that *Kennedy's* application was similarly restricted in *Teepak*, 237 Kan. at 321, decided 3 years after *Ellis*. There, the plaintiff was injured after he ate some sausage and subsequently became ill as a result of a sausage casing obstructing his small intestine. Dr. George Learned performed surgery to remove the casing, leaving plaintiff with only a fraction of his small intestine.

The plaintiff sued Alewel's, the sausage manufacturer, and Teepak, the casing manufacturer, in federal court. Teepak filed a third-party complaint against Learned alleging negligence and seeking indemnification in the event Teepak was found liable. The plaintiff, however, did not assert any claims against Learned. Teepak also filed a separate action against Learned in state court seeking the same relief it sought in its third-party complaint.

After Teepak and Alewel's settled the federal action, Teepak's third-party complaint was dismissed without prejudice. Teepak then attempted to proceed with its action against Learned in state court. The district court denied Learned's motions for dismissal and summary judgment, and Learned filed an interlocutory appeal.

Relying upon *Ellis*, the Kansas Supreme Court concluded Teepak had no cause of action against Learned even if his negligence contributed to the plaintiff's injuries. The court reasoned:

"In the case before us, Teepak (like in the railroad in *Ellis*) is seeking post-settlement contribution from a party against who the injured party never sought recovery but whom it claims contributed to the injured party's damages. As we held in *Ellis* this constitutes an action seeking post-settlement contribution rather

than indemnity and the holding of *Kennedy* relative to "comparative implied indemnity" is inapplicable. We conclude the trial court erred in holding Teepak had a valid cause of action against Learned predicated upon indemnification." 237 Kan. at 328.

As it had in *Ellis*, the court in *Teepak* strongly limited its holding in *Kennedy*:

"The difficulties that have arisen from the *Kennedy* decision primarily involve some overly broad language utilized therein. *Indemnification among those in the chain of distribution arises out of their contractual relationship with each other and* Kennedy *must be read in the context of its factual situation.* The use of the term 'joint tortfeasors' in Syl. ¶ 9 of *Kennedy,* an indemnity case, is unfortunate and has led to considerable confusion." (Emphasis added.) 237 Kan. at 328.

The court in *Teepak* further noted its agreement with what it termed the "one action rule" adopted in *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 634 P.2d 1127 (1981), wherein plaintiff was injured in an automobile accident, but was not permitted to sue the vehicle manufacturer because he had already recovered from the driver of the vehicle in a comparative negligence action. *Albertson* held that in a negligence action, all parties to the occurrence must have their rights and liabilities determined in one action:

"Albertson's injuries were allegedly caused by a combination of the collision and the lack of crashworthiness of the vehicle in which he rode. They resulted from one occurrence. Albertson's total injuries were evaluated by the jury and determined to be $275,000. Albertson was found responsible for 40% of his own injuries; 60% were caused by others. The action is over. Volkswagen could have been sued in state court but plaintiff chose not to join the corporation for strategic reasons. Albertson is bound by that decision. Under the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible. Those not joined as parties or for determination of fault escape liability." 230 Kan. at 374.

Here, as in *Ellis* and *Teepak,* no commercial or contractual relationship existed between the settling defendant and the governmental entities it sought to pursue for post-settlement contribution, incorrectly denominated as "indemnity or subrogation." And, as in *Albertson,* the plaintiff could have sued the governmental

entities in state court, but for reasons undisclosed to the court, chose not to do so.

*Erosion of the "one-action rule"*

Although DCI concedes that neither *Ellis* nor *Teepak* has been overruled, DCI nevertheless argues subsequent appellate cases have eroded the "one action" rule of *Albertson*, resurrected the all-inclusive holding of *Kennedy*, and broadened the scope of "comparative implied indemnity," or, as it is more properly termed, post-settlement contribution. Barber County and Moore Township suggest, however, that in the few instances where comparative implied indemnity actions have been permitted, the court has continued to rely on the existence of a commercial or chain of distribution relationship among the various parties defendant.

DCI cites *Mathis v. TG&Y*, 242 Kan. 789, 751 P.2d 136 (1988), as evidence of this continued expansion of comparative implied indemnity. There, the plaintiff filed an action against TG&Y after a loose door closure struck plaintiff on the head as he was leaving a TG&Y store, resulting in personal injury. The plaintiff later filed a second lawsuit against several other defendants, alleging negligence as a result of the same incident. 242 Kan. at 790.

After TG&Y settled the second lawsuit, TG&Y moved to dismiss Mathis' original suit based on *Albertson*'s one-action rule. 242 Kan. at 790. On appeal, a divided Supreme Court permitted Mathis to pursue the original suit because a judicial adjudication of the comparative fault of the defendants had not been made. 242 Kan. at 792-93. In a dissent, Justice Herd encouraged the majority to apply the one-action rule, insisting that it was more appropriate for dismissal with prejudice to be considered a determination of the case on its merits, and reasoning that to hold otherwise would permit parties to maintain additional actions arising out of the same incident against other parties. 242 Kan. at 794-95 (Herd, J., dissenting).

However, unlike *Ellis*, *Teepak*, or the present case, *Mathis* involved successive tort claims by a plaintiff against different defendants, not a situation in which neither the plaintiff nor the settling defendant brought claims against a nonparty and then the settling defendant attempted to bring an action arising from its settlement

of the first action. And, as Barber County and Moore Township note, *Mathis* distinguished *Teepak* and, in doing so, confirmed the continuing force of that holding.

Although not mentioned in DCI's appeal brief, DCI sought to rely at oral argument upon *Anderson v. Scheffler*, 242 Kan. 857, 858, 752 P.2d 667 (1988), in further support of its argument regarding elimination of the one-action rule. We note that counsel for Barber County as well as Moore Township addressed this authority at argument, and both have also provided us with post-argument correspondence discussing and distinguishing *Anderson*.

Anderson, a Missouri resident, was severely injured by an auger while delivering a load of poultry meal to a plant. Anderson filed suit against the owner and operator of the plant, Badger By-Products. Badger, a division of Beatrice Companies, Inc. (Beatrice) successfully removed the case to federal district court. Plaintiff's motion to remand the case to state court was denied. Plaintiff then amended his petition to join four additional defendants including Beatrice and Industrial Bearing and Transmission Company, Inc. (IBT), a Missouri corporation that sold the auger to Badger. 242 Kan. at 857-58.

Anderson again moved to remand the case to state court because the addition of IBT as a party defendant would destroy diversity jurisdiction. The court granted plaintiff's motion to amend, adding the additional defendants, but did not include IBT because to do so would destroy diversity jurisdiction. Thereafter, plaintiff filed suit in state court against IBT and Randy Scheffler, an IBT employee who had accepted the auger order. 242 Kan. at 858-59. In the federal case, neither plaintiff nor any of the named defendants made any allegation of fault on the part of IBT or Scheffler. Plaintiff subsequently settled the federal case with Beatrice, releasing all parties except IBT and Scheffler and dismissing the case with prejudice. 242 Kan. at 858-59.

On appeal, the Supreme Court held that a determination of comparative fault had not occurred. The court refused to apply *Albertson* and *Teepak* because plaintiff specifically attempted to retain the right to bring suit against IBT and Scheffler. Although seemingly questioning the rationale behind *Mathis*, the *Anderson*

court permitted plaintiff to maintain a second suit. *Anderson*, 242 Kan. at 865-66.

Although not cited by the parties, we note that the court applied *Mathis* in *Childs v. Williams*, 243 Kan. 441, 757 P.2d 302 (1988). There, the 12-year-old plaintiff was injured in an automobile accident, and the plaintiff's mother and the driver of the vehicle in which the plaintiff was a passenger negotiated a settlement agreement. Because of the plaintiff's minority status, which required court approval of the settlement agreement, the plaintiff's mother filed a negligence action against the driver on the plaintiff's behalf. Following a "friendly hearing," the court approved the settlement. 243 Kan. at 441. No determination of comparative fault occurred, nor did the plaintiff make any attempt to preserve a right of action against the driver of the other vehicle involved in the accident. 243 Kan. at 442.

The plaintiff's mother subsequently filed a negligence action against the other driver. That action was dismissed by the district court based on *Albertson's* one-action rule. 243 Kan. at 442. Relying on *Mathis* and *Anderson*, our Supreme Court reversed the dismissal, permitting the plaintiff's mother to pursue the second suit because no judicial determination of comparative fault had occurred in the plaintiff's initial action. 243 Kan. at 443. In so holding, the court recognized an expansion of the one-action rule to permit a plaintiff to seek judicial determination of comparative fault, regardless of whether the plaintiff had the opportunity to do so earlier in an earlier action.

DCI also relies upon *Mick v. Mani*, 244 Kan. 81, 766 P.2d 147 (1988), in support of its suggestion that the one-action rule has been abrogated. There, after the plaintiff received severe injuries while working on a drilling rig, he simultaneously filed two suits—a products liability suit against the steel, welding, and repair companies and a negligence action against Mani, a plastic surgeon, and others who had treated him. Although the defendants participated in joint discovery, the cases were never consolidated. All defendants except one were dismissed from the first case, and the jury found in favor of the remaining defendant. Similarly, all defendants

were dismissed from the second case except Mani. 244 Kan. at 81-82.

The *Mick* court affirmed the district court's summary judgment in favor of Mani, concluding that even without Mani's presence in the first action, the jury made a determination of comparative fault. The court concluded "[p]laintiff elected to separate his defendants but not his claims of damage. As a result, his entire damage claim was presented to the . . . jury. When that verdict became final, plaintiff's entire damage claim was ended." 244 Kan. at 93. The court indicated the one-action rule should more appropriately be called the "one-trial rule." 244 Kan. at 93.

Finally, DCI relies upon *Schaefer v. Horizon Bldg. Corp.*, 26 Kan. App. 2d 401, 985 P.2d 723 (1999). In *Schaefer,* homeowners sued the general contractor and "John Doe" for remedial cement work performed on their home. The general contractor settled the claims and subsequently brought a third-party comparative implied indemnity claim against the subcontractor. This court recognized that comparative implied indemnity is "an equitable remedy available to a single defendant, among a number of tortfeasors, who by settling with the plaintiff or paying a judgment, pays the other tortfeasors' share of liability." 26 Kan. App. 2d at 403. Nevertheless, the court held that the general contractor did not have a valid comparative implied indemnity claim against the subcontractor because the subcontractor was not at risk of suit as the statute of limitations on the homeowners' claims had expired. 26 Kan. App. 2d at 403. The court held:

"In order to prevail on a claim for partial indemnity or contribution against a third-party defendant, the settlor must show it actually paid damages on behalf of that third party. If the third party was never at risk of having to pay for its own damages, the settlor cannot show it benefitted the third-party defendant, and the value of its contribution claim is zero." 26 Kan. App. 2d 401, Syl. ¶ 2.

Our review of the cases decided post-*Albertson* reveals that certain exceptions to the one-action rule have been recognized in limited situations. Therefore, the question for this court becomes whether the facts of the present case fit under the broader rule as expressed in *Mathis* and recognized in *Anderson* as DCI suggests,

or whether the facts remain squarely within the rule announced in *Ellis* and *Teepak,* as the County and Township suggest.

We note that the court in *Anderson* permitted plaintiff to pursue a second action against defendants not involved in the original lawsuit, holding that "where a plaintiff is prevented from joining a necessary party in federal court because of loss of diversity, as in this case, the action against that party survives in state court as an *exception* to the rule in *Albertson.*" (Emphasis added.) 242 Kan. at 865.

Here, unlike the plaintiff in *Anderson*, DCI did not make any attempt to join Moore Township or Barber County in the underlying action. Moreover, DCI does not explain its failure to join the governmental entities or suggest that it was otherwise prevented from doing so. While DCI persuasively asserts that the harshness of the one-action rule has been ameliorated, the exception provided in *Anderson* does not logically apply here.

Moreover, our review of *Mathis* and its progeny reveals that those cases also do not control the outcome of the present case. In *Mathis*, the Supreme Court permitted plaintiff to pursue a second action only in limited circumstances. The court reasoned:

"After an adjudication of comparative fault, no party should be afforded a second opportunity to litigate percentages of causal negligence. K.S.A. 60-258a certainly contemplates one action in which comparative fault is determined. However, it was never the intent of the legislature or this court to place form over substance and preclude *a plaintiff* from proceeding against a tortfeasor when there has been no judicial determination of comparative fault. Mathis has been denied his action. TG&Y is not prejudiced by allowing the suit to proceed. It may join other defendants for the purpose of comparing negligence at the trial." (Emphasis added.) 242 Kan. at 794.

There is little doubt that the *Albertson* court, when it considered the purpose behind K.S.A. 60-258a, anticipated the one-action rule would apply to prevent both plaintiffs and defendants alike from seeking additional recovery in subsequent lawsuits. However, as the one-action rule has evolved, the courts have seemingly developed a preference for permitting *plaintiffs* to pursue a second suit against defendants not party to the original action. See, *e.g., Childs*, 243 Kan. at 441. As the court in *Mick* recognized, "[I]t appears

that under the most recent comparative fault cases, namely *Mathis*, *Anderson*, and *Childs*, a *plaintiff* may pursue separate actions against tortfeasors where there has been no judicial determination of comparative fault. Thus, the exceptions to the one-action rule arise when there has been no prior judicial determination of fault." (Emphasis added.) 244 Kan. at 93.

Relying upon *Mick*, DCI argues comparative implied indemnity need only be sought from the third party *before* an apportionment of fault is made in the underlying action. However, in *Mick* the court prevented plaintiff from pursuing a second action because the jury had made a determination of comparative fault at trial by denying plaintiff relief. Significantly, *Mick* involved an attempt by the *plaintiff* to achieve multiple recovery. Again, DCI cites no authority for its suggestion that this exception to the one-action rule may be extended to defendants.

Further, we find flaws in DCI's citation of *Schaefer* to support its claim that DCI's cause of action here was preserved because the statute of limitations had not expired. Although this court in *Schaefer* based its dismissal of the plaintiff's claim on the fact that the third-party defendant was no longer at risk of suit because the statute of limitations had expired, 26 Kan. App. 2d at 403, the *Schaefer* court did not indicate an intent to permit defending parties to pursue claims for comparative implied indemnity at will. Rather, the court refused to undergo an in-depth analysis regarding whether a claim for comparative implied indemnity was feasible when such a claim would have been barred by the statute of limitations regardless of the outcome.

Further, while it is tempting to rely upon the district court's rationale that the basis for denying DCI's cause of action was the failure to join Barber County and Moore Township pursuant to K.S.A. 60-258a, this conclusion is inappropriate. The purpose of K.S.A. 60-258a is not to impose liability on a joint tortfeasor but to protect a defendant from bearing the entire burden for its nonparty joint tortfeasors. See *Ellis*, 231 Kan. at 189. K.S.A. 60-258a cannot expand liability to a tortfeasor from whom plaintiff has not sought recovery. See *Ellis*, 231 Kan. at 191-92 ("It is inconsistent then to suggest the action of one defendant in settling the claim can

broaden another defendant's liability beyond what it would have been had the case gone to trial."). Thus, even if DCI had joined Barber County and Moore Township under K.S.A. 60-258a, DCI's claim for comparative implied indemnity would nevertheless be unavailable.

Moreover, even if Moore Township and Barber County had been joined in the federal action pursuant to K.S.A. 60-214, DCI could not pursue an action for comparative implied indemnity under *Kennedy*. As discussed above, the Supreme Court in *Teepak* expressly limited comparative implied indemnity to cases involving indemnification among those in the chain of distribution, rejecting the notion that a claim was available against all "joint tortfeasors." 237 Kan. at 328; see also *Ellis*, 231 Kan. at 184; *Blackburn, Inc. v. Harnischfeger Corp.*, 773 F. Supp. 296, 299 (D. Kan. 1991) (acknowledging that claim for comparative implied indemnity was limited to parties in manufacturer's chain of distribution and supply or parties in which explicit contract for indemnification or contribution was formed).

Thus, we interpret Kansas law to require defendants seeking to minimize their liability in comparative fault situations not involving a chain of distribution or similar commercial relationship to do so by comparing the fault of other defendants in order to reduce their own share of liability and damages. If a defendant chooses to settle and obtain release of common liabilities involving other parties whom the plaintiff did not sue, the defendant does not have an action for comparative implied indemnity or post-settlement contribution. This holding recognizes that under Kansas comparative fault procedure such a remedy is not necessary, and further recognizes that such an action defeats the policy of judicial economy, multiplying the proceedings from a single accident or injury.

The United States District Court for the District of Kansas succinctly summarized the rule from *Ellis* and *Teepak* as barring lawsuits between joint tortfeasors when

"(1) an injured party has previously sued one tortfeasor, but not others, (2) that tortfeasor has settled with the injured party, (3) the injured party has given a full release of all claims held by it, and (4) the settling tortfeasor claims the other tortfeasors caused all or part of the injured party's damages." *St. Francis Regional*

*Medical Center, Inc. v. Critical Care, Inc.*, 997 F. Supp. 1413, 1430 (D. Kan. 1997).

Here, BNSF sued DCI but did not sue Moore Township or Barber County; DCI settled with BNSF; BNSF gave a full release of claims in the settlement agreement; and DCI now seeks to recover from Moore Township and Barber County, alleging those parties caused all or part of BNSF's injuries. Under these circumstances, we hold the district court properly dismissed DCI's claim for comparative implied indemnity.

*Dismissal of negligence claims based upon K.S.A. 2006 Supp. 12-105b*

DCI also appeals from the district court's dismissal of its claim for failure to provide notice to Moore Township and Barber County pursuant to K.S.A. 2006 Supp. 12-105b. The court held DCI could not maintain an action for negligence or negligence per se because it failed to indicate the amount of monetary damages sought and thus did not substantially comply with the notice provisions of K.S.A. 2006 Supp. 12-105b.

*Standard of Review*

Whether DCI's notice complies with K.S.A. 2006 Supp. 12-105b involves both statutory interpretation and construction of a written instrument. The interpretation of a statute is a question of law over which we have unlimited review. In this review, we are not bound by the trial court's interpretation. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). The interpretation and legal effect of a written instrument is also a matter of law, and an appellate court exercises unlimited review. *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 431, 109 P.3d 1146 (2005).

K.S.A. 2006 Supp. 12-105b(d) requires any person having a claim against a municipality that could give rise to a tort action to file a written notice with the clerk or governing body of the municipality before commencing the action. The notice must contain:

"(1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee in-

volved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested." K.S.A. 2006 Supp. 12-105b(d)

In applying this statute, we note that the primary purpose of K.S.A. 2006 Supp. 12-105b "is to insure that a municipality is made aware of a claim against it and that the municipality has ample time to investigate the claim before being sued on that claim." *Smith v. Kennedy*, 26 Kan. App. 2d 351, 361, 985 P.2d 715, *rev. denied* 268 Kan. 888 (1999); see also *Bell v. Kansas City, Kansas, Housing Authority*, 268 Kan. 208, 210, 992 P.2d 1233 (1999) (purpose of K.S.A. 12-105b is to allow municipalities to consider and settle meritorious claims without litigation by requiring claimants to present claims ahead of time so governing body can make informed and intelligent decision on its course of conduct).

Neither Barber County nor Moore Township challenge the sufficiency of the notice with respect to the factual basis included in the notice or the identification of the public officer or employee involved. Thus, we will consider only whether the notice adequately described the name and address of the claimant and claimant's attorney, the nature and extent of the injury, and the itemization of damages.

### Name and address of claimant and claimant's attorney

Under the heading "Claimant," the notice lists only Continental Western Insurance Company. DCI recognizes the notice did not specifically identify DCI as the claimant, but points out that the notice does mention that DCI sustained damages and suggests the court must look to substance over form.

While DCI's "substance over form" argument might be persuasive if the notice had identified DCI as a claimant in some manner at any point in the notice, it did not. Rather, the notice consistently refers to the damages and recovery sought by Continental Western Insurance Company, referring to DCI only in passing as necessary to explain the facts.

The notice simply did not alert Barber County and Moore Township that DCI was a claimant rather than a mere participant in the

underlying sequence of events. Moreover, the notice also omits both DCI's address and the name and address of DCI's attorney.

Under these circumstances, we conclude the notice did not substantially comply with K.S.A. 2006 Supp. 12-105b because it did not identify either the name and address of DCI as a claimant; or the name and address of DCI's attorney.

### Nature and extent of claimant's injury

In its brief, DCI contends the notice's inclusion of a statement that the "'collision caused extensive damage to Dodge City Implement's truck and cargo'" was sufficient to substantially comply with the requirement that the notice identify the nature and extent of claimant's injury. While this statement may have been sufficient under other circumstances, DCI has taken the phrase out of context here.

The notice contained a separate heading entitled "Nature and Extent of Injury Suffered." Significantly, the language cited by DCI was not included in that section. Thus, the notice failed to indicate that DCI suffered any injury upon which it, as a claimant, intended to seek recovery. Moreover, pursuant to the notice, recovery for any injuries received was limited to those stated by the claimant, Continental Western Insurance Company.

Thus, we find the notice failed to substantially comply with K.S.A. 2006 Supp. 12-105b with respect to the requirement that the notice identify the nature and extent of the claimant's injury.

### Monetary damages

Finally, DCI challenges the district court's dismissal of its negligence and negligence per se claims for failure to identify monetary damages, arguing that an exact monetary figure is not necessary to substantially comply with K.S.A. 2006 Supp. 12-105b. However, DCI fails to acknowledge that the notice lacks·any indication that DCI intended to seek recovery in any amount. As Moore Township articulates in its brief, DCI's claims and damages were either liquidated or were not difficult to estimate, and noneconomic damages were not sought, *i.e.*, DCI paid $3,000,000 to

BNSF and suffered $92,313.34 in alleged property damage to its truck and cargo.

Because the notice was lacking one or more of the relevant elements, it was fatally insufficient pursuant to K.S.A. 2006 Supp. 12-105b, and the district court lacked jurisdiction to consider DCI's claims of negligence and negligence per se. See *Tucking v. Board of Jefferson County Comm'rs*, 14 Kan. App. 2d 442, Syl. ¶ 3, 796 P.2d 1055, *rev. denied* 246 Kan. 770, (1990).

Accordingly, we conclude the district court properly dismissed DCI's claims for negligence and negligence per se as well as its claim of comparative implied indemnity.

Affirmed.