No. 96,784

DODGE CITY IMPLEMENT, INC., and JUSTIN L. SLATTERY, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BARBER and THE MOORE TOWNSHIP, BARBER COUNTY, KANSAS, *Appellees*.

(205 P.3d 1265)

Opinion filed April 24, 2009.

*Mark A. Buck*, of Fairchild & Buck, P.A., of Lawrence, argued the cause, and *Clinton W. Lee*, of the same firm, was with him on the briefs for appellants.

*Stephen M. Kerwick*, of Foulston Siefkin LLP, of Wichita, argued the cause and was on the briefs for appellee Board of County Commissioners of Barber County.

*Edward L. Keeley*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause and was on the briefs for appellee Moore Township.

The opinion of the court was delivered by

BEIER, J.: This case arises out of a collision between a Burlington Northern and Santa Fe Freight (BNSF) train and a truck owned by Dodge City Implement, Inc. (DCI). BNSF filed suit in federal court against DCI and its employee driver, Justin Slattery. After that action was settled, plaintiffs DCI and Slattery pursued this suit against defendants Barber County (County) and Moore Township (Township) under negligence and implied indemnity theories because of an alleged failure to construct and maintain a safe grade crossing. The district judge granted defendants' motion to dismiss. We granted plaintiffs' petition for review from a Court of Appeals decision affirming the district court result in *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 38 Kan. App. 2d 348, 165 P.3d 1060 (2007).

The issues before us are two: Did the district judge err in concluding that plaintiffs have no viable cause of action against defendants for comparative implied indemnity? And did the district judge err in concluding that plaintiffs did not substantially comply with K.S.A. 12-105b(d)?

*Factual and Procedural History*

The accident that led to this appeal occurred on September 8, 2003. The following February, BNSF filed suit against DCI and

Slattery in the United States District Court for the District of Kansas.

Approximately 2 months later, the parties entered into a Mutual Release and Settlement Agreement under which DCI and Slattery paid $3 million to settle BNSF's claims "against all parties and persons." DCI and Slattery expressly reserved any right they had "to make a claim against or sue Barber County, Kansas, and/or any person or entity, other than [BNSF] . . . for comparative implied indemnity and any other cause of action that may exist under Kansas law."

On August 23, 2004, counsel for DCI and Slattery sent a letter to the Barber County Clerk on behalf of their insurer, Continental Western Insurance Company, which purported to serve as a notice of the insurer's claims under K.S.A. 12-105b(d).

DCI and Slattery filed this suit against Barber County in June 2005. Their petition alleged that the County was responsible for maintaining the grade crossing and traffic controls at the site of the accident, that a warning sign was absent at the time of the accident, that earthen obstacles and vegetation obscured visibility, and that the angle of the road and an excessively short highway approach created a dangerous condition for crossing vehicles. The petition purported to include causes of action based on negligence, negligence per se, comparative implied indemnity, and implied indemnity. Plaintiffs later filed an amended statement of damages reflecting the $3 million settlement amount paid to BNSF plus $92,313.34 for damages sustained by DCI and Slattery.

The County answered, substantially agreeing with the factual allegations of DCI and Slattery but asserting that (1) the doctrine of implied comparative indemnity was inapplicable because the County was not a party to the federal lawsuit and no product's chain of distribution was involved in this action; (2) the doctrine of implied indemnity was inapplicable because there was no legal relationship between the County and the plaintiffs that obligated plaintiffs to enter into a settlement agreement and the plaintiffs were not without fault; and (3) it was immune under the Kansas Tort Claims Act. The County subsequently filed a K.S.A. 60-212(b)(6) motion to dismiss plaintiffs' claims of comparative implied indem-

nity and implied indemnity for failure to state claims upon which relief could be granted.

On September 9, 2005, DCI and Slattery sought to join the Township as a defendant, claiming discovery had revealed the Township bore responsibility for designing, constructing, maintaining and controlling the roadway and grade crossing at issue. Plaintiffs maintained that an August 12, 2005, letter, sent by plaintiffs' counsel to the clerk and trustee of the Township, provided sufficient notice of their claims under K.S.A. 12-105b(d). This letter was nearly identical to the letter sent to the County a year earlier.

The district judge heard the parties' arguments on the County's motion to dismiss on November 14, 2005, and took the matter under advisement. The judge granted plaintiffs' motion to join Moore Township on December 28, 2005, and the plaintiffs filed an amended petition including the Township as a defendant on the same day.

The County and the Township each filed an answer to the amended petition. The County maintained its affirmative defenses and asserted that the Township had jurisdiction over the portion of the road where the accident occurred. The Township asserted: (1) The August 12, 2005, letter did not constitute substantial compliance with the notice requirements of K.S.A. 12-105b(d), therefore depriving the district court of subject matter jurisdiction over plaintiffs' claims against it; (2) plaintiffs' claims were barred by applicable statutes of limitations, statutes of repose, and laches; (3) plaintiffs' claims of negligence, negligence per se, comparative implied indemnity, and implied indemnity failed to state claims upon which relief could be granted; (4) plaintiffs' claims were barred by the one-action or one-trial rule; (5) plaintiffs' claims were barred by the Kansas Tort Claims Act, K.S.A. 75-6101 et seq.; (6) plaintiffs' negligence claims were barred by comparative fault rules; (7) the Township was not negligent; and (8) plaintiffs' claimed damages were overstated and limited by statute.

On February 27, 2006, the Township filed a motion to dismiss. The County supplemented its earlier motion to dismiss, incorporating the arguments and authorities cited by the Township on the K.S.A. 12-105b(d) issue. Thereafter, the district judge heard ar-

guments and ruled for the County and the Township on their pair of motions to dismiss. The judge made the following findings and arrived at the following conclusions:

"1. Defendants' motion to dismiss plaintiffs' comparative implied indemnity claim should be and hereby is sustained on the basis that the defendants herein were not named defendants or joined pursuant to K.S.A. 60-258a(c) in the previous related federal lawsuit brought by Burlington Northern and Santa Fe Railway Co. and that it would be unfair to defendants herein to subject them to allegations of fault now that were not asserted in the federal case. The Court adopts by reference the legal authorities cited by defendants in their brief, including the original and subsequent briefs filed by defendant Barber County.

"2. Defendants' motion to dismiss plaintiffs' negligence and negligence per se claims for property damage in the amount of $92,313.34 should be and hereby is sustained on the basis that plaintiffs' notice of claim filed with defendants did not substantially comply with K.S.A. 12-105b(d) regarding this claim and therefore the Court lacks jurisdiction over it.

"3. Defendants' motion to dismiss plaintiffs' implied contractual indemnity claim should be and hereby is sustained on the basis of the legal authorities cited in defendants' briefs."

The district judge treated the motions to dismiss as summary judgment motions, considering materials beyond the pleadings. See *Perry v. Board of Franklin County Comm'rs*, 281 Kan. 801, 806-07, 132 P.3d 1279 (2006).

Plaintiffs appealed the dismissal of their $3 million comparative implied indemnity claim as barred by the "single action" rule and the dismissal of their negligence and negligence per se claims as barred by failure to comply with the notice statute. They did not appeal the dismissal of their implied indemnity claim.

A panel of our Court of Appeals affirmed, *Dodge City Implement, Inc.*, 38 Kan. App. 2d 348, closely examining several of our prior cases, including *Teepak, Inc. v. Learned*, 237 Kan. 320, 699 P.2d 35 (1985); *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, 643 P.2d 158, *aff'd on rehearing* 232 Kan. 194, 653 P.2d 816 (1982); and *Kennedy v. City of Sawyer*, 228 Kan. 439, 618 P.2d 788 (1980). The panel concluded that

"[a] defendant seeking to minimize its liability in a comparative fault situation not involving a chain of distribution or similar commercial relationship must do so by comparing the fault of other defendants pursuant to K.S.A. 60-258a in order to reduce its own share of liability and damages. If the defendant chooses to settle

and obtain a release of common liabilities involving other parties whom the plaintiff did not sue, the defendant does not have an action for comparative implied indemnity or post-settlement contribution for damages caused by other tortfeasors." *Dodge City Implement, Inc.*, 38 Kan. App. 2d 348, Syl. ¶ 1.

The panel also evaluated the letters sent to the County and the Township under K.S.A. 2006 Supp. 12-105b(d) and concluded they were fatally insufficient to support the negligence and negligence per se claims for more than $92,000. In the panel's view, the letters failed to indicate, as required, the name and address of the claimants or the claimants' attorney, the nature and extent of the injuries claimed, and the amount of damages sought. This conclusion led the panel to affirm the district judge's dismissal of these two claims. *Dodge City Implement, Inc.*, 38 Kan. App. 2d 348, Syl. ¶ 2.

On petition for review, plaintiffs argue that the panel's analysis of its comparative implied indemnity claim was inconsistent with post-*Ellis* and *Teepak* cases eroding the one-action rule and that the panel improperly required strict, rather than substantial, compliance with the notice provision of K.S.A. 2008 Supp. 12-105b(d).

## *Comparative Implied Indemnity*

Our standard of review when a motion to dismiss has been treated as a motion for summary judgment matches that for summary judgment generally:

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." ' [Citations omitted.]" *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005).

In this case, there is no factual dispute and our review is unlimited. See *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004).

The Kansas Legislature's 1974 adoption of comparative negligence, embodied in K.S.A. 60-258a, abolished joint and several liability and replaced it with proportional, or comparative, liability, in which the loss is borne by each tortfeasor in proportion to his or her share of the total fault. K.S.A. 60-258a(d); *Brown v. Keill*, 224 Kan. 195, 203-04, 580 P.2d 867 (1978).

K.S.A. 60-258a(c) contains a joinder provision, which states:

"On motion of any party against whom a claim is asserted for negligence resulting in . . . personal injury, property damage or economic loss, any other person whose causal negligence is claimed to have contributed to such . . . personal injury, property damage or economic loss, shall be joined as an additional party to the action."

The intent and purpose of the statute was "to impose individual liability for damages based on the proportionate fault of all parties to the occurrence." *Brown*, 224 Kan. at 207.

To meet this objective, this court interpreted the joinder provision to encompass even the joinder of immune, unknown, and unavailable tortfeasors, stating in 1978:

"After having answered the preliminary questions and having applied the rules of statutory construction previously set forth in this opinion we conclude the intent and purpose of the legislature in adopting K.S.A. 60-258a was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault." *Brown*, 224 Kan. at 207.

The principal argument of plaintiffs DCI and Slattery in this appeal is that, despite the language of K.S.A. 60-258a and the broad interpretation given it in *Brown*, the fault of the County and the Township need not have been subject to comparison in BNSF's federal lawsuit in order for the plaintiffs, as settling defendants, to seek indemnity from the County and the Township in this second action.

The chain of precedent upon which DCI and Slattery rely extends back to 1980, when this court decided *Kennedy*, 228 Kan. 439. In that case, landowners whose cattle died from arsenic poisoning sued the City of Sawyer (Sawyer) and a Sawyer city councilman who were responsible for spraying herbicide along a fence

separating Sawyer's land from the plaintiff landowners' pasture. The defendants filed a third-party complaint against the distributor of the herbicide; the distributor, in turn, sought recovery from the manufacturer. Motions for summary judgment and to dismiss the distributor and manufacturer were filed, and the district judge ruled that indemnity was unavailable as a matter of law on these facts. The judge did not mention the comparative negligence statute, and comparative negligence principles played no part in the decision.

Sawyer and the city councilman appealed the district judge's dismissal of the third parties. While the appeal was pending in the Court of Appeals, Sawyer settled the landowners' claim, and the district judge dismissed the underlying case with prejudice. In its ultimate opinion, the Court of Appeals addressed the comparative negligence statute, but it affirmed the district judge's dismissal of the third parties under law predating the statute.

In this "awkward position," this court took up Sawyer's petition for review. Sawyer claimed that it should have been permitted to join the third parties—either to allocate fault under the comparative negligence statute or to secure indemnification because the third parties were strictly liable for harm caused by their product.

This court framed the issue as: "[W]hether comparative negligence principles should be applied to a product strict liability action and whether indemnity might be recovered," but it noted that the settlement of the plaintiff landowners' claim made the "comparative negligence questions secondary to the indemnity issue." *Kennedy*, 228 Kan. at 448.

Despite this order of priorities, the court began its analysis by agreeing with the Court of Appeals that "the doctrine of comparative fault or comparative causation should be and is applicable to both strict liability claims and to those claims based on implied warranty in products liability cases." *Kennedy*, 228 Kan. at 452. The court held that the statutory adoption of comparative negligence

"abrogat[ed] the concept of indemnification based on the dichotomy of active/passive negligence as conceptualized in [the case law relied on by the district court to dismiss the third-party claims]. In actions where comparative negligence is in

issue the court deals in percentages of causal responsibility, . . . and the all or nothing concepts [of indemnification] are swept aside." *Kennedy*, 228 Kan. at 453.

Still, because plaintiffs, as part of their settlement with Sawyer and the city councilman, released any and all parties who might have contributed to the plaintiffs' damages, they could have no recovery against third parties. *Kennedy*, 228 Kan. at 453.

The *Kennedy* court then moved to the controlling question of whether Sawyer and the city councilman could nevertheless seek indemnification from the third parties. The court observed: "Traditional implied indemnity, such as that sought by the city in this case, implies a shifting of 100% of a loss from the indemnitee to the indemnitor," whereas " 'contribution' . . . contemplates a shift of only part of the loss to another." *Kennedy*, 228 Kan. at 454 (citing *Cullen v. Atchison, T. & S. F. Rly. Co.*, 211 Kan. 368, 375, 507 P.2d 353 [1973]; Prosser, Handbook of the Law of Torts § 51, p. 310 [4th ed. 1971]). Claims of indemnity are either express, *i.e.*, "when there is an express contract of indemnity, such as a 'hold harmless' agreement," or implied, *i.e.*, "when one is compelled to pay what another party ought to pay," because of a legal relationship, such as respondeat superior. *Kennedy*, 228 Kan. at 455. The court recognized that traditional implied indemnity was all or nothing, a very " 'blunt instrument' for reallocating loss," and that comparative negligence promised relief from the inadequacies of that instrument. 228 Kan. at 456.

The court continued:

"[T]o satisfy the legislative intent of encouraging resolution of all issues in a single action, the comparison of fault of all wrongdoers should be effected in the original action. [Citation omitted.] It must be recognized that the procedural mechanism of K.S.A. 60-258a(c) exists to facilitate joinder (and hence comparison) of all potential wrongdoers and may supersede the third-party mechanism which formerly provided the only means for securing a consideration of the fault of a wrongdoer who plaintiff chose not to sue. The maintenance of a claim by plaintiff against a joined party is not a prerequisite to securing comparison. [*Brown*,] 224 Kan. 195, Syl. ¶ 6. It would appear, however, that the formal 'joinder' mechanism of K.S.A. 60-258a(c) evidences a legislative intent to allow a defendant to force comparison of his fault with that of a third party. This court has not, however, viewed the invocation of formal joinder as a necessary prerequisite to effecting comparison of fault [citation omitted], and this court has recognized that the comparative

negligence statute is silent as to what position the added party occupies once that party is joined.

"We conclude that now is the proper time under the facts of this case to adopt a form of comparative implied indemnity between joint tortfeasors. When as here a settlement for plaintiffs' entire injuries or damages has been made by one tortfeasor during the pendency of a comparative negligence action and a release of all liability has been given by plaintiffs to all who may have contributed to said damages, apportionment of responsibility can then be pursued in the action among the tortfeasors.

. . . .

". . . In the present case where the amount of the damages [was] not fixed by judicial proceedings, but by compromise and settlement between plaintiff and defendants, it will be the duty of the defendants to bring into the action all tortfeasors against whom comparative liability through indemnity is sought. Reasonable damages if less than the settlement figure should be judicially determined. If the reasonable amount of the damages is determined to be more than the settlement figure, all tortfeasors will receive the benefit of the bargain struck by the settling tortfeasor. The apportionment should be accomplished in the action which was pending between plaintiff and defendants when the compromise and settlement is accomplished. If a settlement has been made for all liability arising from the occurrence before a comparative negligence action has been filed, the settling tortfeasor may then and in that event file an action in court to have the degrees of responsibility among joint tortfeasors determined, damages assessed and apportionment decreed among them.

"In such a case it would appear that the amount the defendant or defendants have paid in full settlement of plaintiffs' claim would be the maximum amount subject to be apportioned. In any action where apportionment of responsibility is sought by a settling tortfeasor he or she will be required to establish the reasonableness of the amount of the settlement, and that he or she had an actual legal liability he or she could not be expected to successfully resist." (Emphasis added.) *Kennedy*, 228 Kan. at 460-61.

The next case in the relevant chain of precedent was decided a year after *Kennedy*, and it lacked the straddle across statutory change that made *Kennedy* awkward. In the case, *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 634 P.2d 1127 (1981), a driver injured in a motor vehicle accident sued the other driver in state court. The jury allocated 40 percent fault in the accident to the plaintiff and 60 percent to the defendant and set damages at $275,000. After the judgment was satisfied, the plaintiff brought a second suit in federal court against Volkswagenwerk Aktiengesellschaft (Volkswagen), the manufacturer of his vehicle, al-

leging strict liability for injuries and damages caused by its defective product. When Volkswagen moved for summary judgment, the federal district court certified the following question to this court:

" 'Having once obtained a satisfied judgment for a portion of his injuries in a comparative negligence action, may a plaintiff bring an action to recover damages for the remaining portion of his injuries against a defendant not a party to the first action, such second action being based on strict liability in tort?' " 230 Kan. at 369.

This court answered the question "no." 230 Kan. at 374. The court noted its earlier ruling in *Kennedy* but stated:

"The action is over. Volkswagen could have been sued in state court but plaintiff chose not to join the corporation for strategic reasons. Albertson is bound by that decision. Under the doctrine of comparative fault all parties to an occurrence must have their fault determined in one action, even though some parties cannot be formally joined or held legally responsible. Those not joined as parties or for determination of fault escape liability." *Albertson*, 230 Kan. at 374.

This portion of the *Albertson* decision often is cited as the genesis of Kansas' judicial one-action rule. See *Chavez v. Markam*, 256 Kan. 859, Syl. ¶ 3, 889 P.2d 122 (1995); *Mick v. Mani*, 244 Kan. 81, Syl. ¶¶ 1-2, 766 P.2d 147 (1988); *Tersiner v. Gretencord*, 17 Kan. App. 2d 551, Syl. ¶¶ 1-5, 840 P.2d 544 (1992), *rev. denied* 252 Kan. 1094 (1993). In actuality, it is merely a strong reiteration of the expansive joinder language of K.S.A. 60-258a(c).

Our next two cases, *Ellis*, 231 Kan. 182 and *Teepak, Inc.*, 237 Kan. 320, were consistent with *Albertson* and explicitly limited the expansive language of *Kennedy*. Judge Nancy L. Caplinger, writing for the Court of Appeals panel in this case, correctly described their import as follows, and we adopt the panel's analysis:

"Barber County and Moore Township respond that this case is not controlled by *Kennedy*, but rather by *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, wherein they assert the Kansas Supreme Court expressly disapproved application of *Kennedy* to circumstances similar to those in this case.

"The facts in *Ellis* are very similar to those here. In *Ellis*, the plaintiff sued the railroad for damages arising out of a collision between the plaintiff's vehicle and a train. 231 Kan. at 183. Pursuant to K.S.A. 60-258a(c), the railroad joined several governmental entities, including two townships and a county, but the plaintiff did not assert any claims against these entities. The railroad then settled the case with the plaintiff and obtained an agreement from the plaintiff that included a release

of the governmental entities and a promise by plaintiff to cooperate with the railroad in the prosecution of any claim for indemnity or contribution. After approval of the settlement, the railroad attempted to pursue a claim in the same action for comparative implied indemnity against the governmental entities. 231 Kan. at 183. The Supreme Court, however, upheld dismissal of the railroad's claim for implied indemnity or contribution, holding that no cause of action was available. 231 Kan. at 191-92.

"The court in *Ellis* distinguished *Kennedy*, noting that while *Kennedy* involved joinder of defendants under K.S.A. 60-214, the case before it concerned joinder of additional defendants pursuant to K.S.A. 60-258a. 231 Kan. at 187-89. The court held that because no party sought recovery against the governmental entities, the railroad could not subsequently recover from the governmental entities even if they were at fault. The court reasoned that had the governmental entities been subject to liability, they might have been subject to contribution. 231 Kan. at 190. Further, the *Ellis* court noted that *Kennedy* involved 'indemnification against other parties in the manufacturer's chain of distribution and supply.' *Ellis*, 231 Kan. at 184.

"Significantly, the *Ellis* court specifically limited the language in *Kennedy* which DCI relies upon here. The court stated:

" 'Broad language in the *Kennedy* opinion, 228 Kan. at 460-61, outlining the defendant's role in bringing "into the action all tortfeasors against whom comparative liability through indemnity is sought" goes far beyond the facts of the *Kennedy* case and is disapproved to the extent that it suggests a defendant can enlarge the liability of other defendants.' 231 Kan. at 191.

"Further, the court in *Ellis* clarified the nature of the cause of action which the settling defendants might have had if they had met the 'procedural prerequisites':

" 'The relief granted by this court, in light of the facts in the *Kennedy* case and the interplay of principles of comparative negligence, indemnity, and settlement, was termed an action for comparative implied indemnity. We recognize the term is not appropriate to the case at bar in which post-settlement contribution, rather than indemnity, is at issue. However, while proportional contribution is a more appropriate term in the instant case, we have no desire to belabor that distinction and cloud the issue before us which concerns procedural prerequisites to *any* claim for post-settlement proportional payment, regardless of the nomenclature used.' 231 Kan. at 184.

"Here, as in *Ellis*, DCI is actually seeking proportional post-settlement contribution rather than comparative implied indemnity from the governmental entities. And, like *Ellis*, regardless of the nomenclature used, it appears the procedural prerequisites to post-settlement proportional payment were not met as Barber County and Moore Township were not subject to liability in the previous action. In fact, this case arguably presents a stronger case for denial of post-settlement contribution than *Ellis*, as DCI did not seek to join the governmental entities as defendants pursuant to K.S.A. 60-258a, as did the railroad in *Ellis*. Moreover,

DCI did not allege in its answer in the federal case that anyone other than BNSF was at fault for the accident.

"DCI attempts to distinguish *Ellis* by suggesting that *Ellis* turned upon whether the plaintiff in the original action could have brought an action against the governmental entities at the time the railroad settled the claims with the plaintiff. DCI points out that in *Ellis,* the statute of limitations on the plaintiff's claims against the governmental entities had already expired at the time of settlement. Here, DCI settled with the plaintiff, BNSF, *before* BNSF's statute of limitations for claims against the governmental entities had expired.

"However, DCI neglects to point out that the court in *Ellis* expressly rejected this argument:

" 'In the case at bar the defendants against whom contribution is now sought were not subject to actual liability since the plaintiffs had made no claim against them. Union Pacific argues the potential for recovery existed because of the possibility of amendment of the plaintiff's petition to state a claim under the relation back provisions of K.S.A. 60-215 despite the running of the statute of limitations under K.S.A. 60-513. We need not reach that issue because plaintiffs did not attempt to amend their petitions either before or after the running of the statute of limitations.' 231 Kan. at 191-92.

"Here, BNSF did not attempt to amend its petition in the federal action to make a claim against the governmental entities before settling with the original defendant. The determinative factor here, as it was in *Ellis,* is not whether the statute of limitations had run at the time of settlement but whether the governmental entities were subject to liability in the prior action.

"*Teepak v. Learned*

"Barber County and Moore Township point out that *Kennedy's* application was similarly restricted in *Teepak,* 237 Kan. at 321, decided 3 years after *Ellis.* There, the plaintiff was injured after he ate some sausage and subsequently became ill as a result of a sausage casing obstructing his small intestine. Dr. George Learned performed surgery to remove the casing, leaving plaintiff with only a fraction of his small intestine.

"The plaintiff sued Alewel's, the sausage manufacturer, and Teepak, the casing manufacturer, in federal court. Teepak filed a third-party complaint against Learned alleging negligence and seeking indemnification in the event Teepak was found liable. The plaintiff, however, did not assert any claims against Learned. Teepak also filed a separate action against Learned in state court seeking the same relief it sought in its third-party complaint.

"After Teepak and Alewel's settled the federal action, Teepak's third-party complaint was dismissed without prejudice. Teepak then attempted to proceed with its action against Learned in state court. The district court denied Learned's motions for dismissal and summary judgment, and Learned filed an interlocutory appeal.

"Relying upon *Ellis,* the Kansas Supreme Court concluded Teepak had no cause of action against Learned even if his negligence contributed to the plaintiff's injuries. The court reasoned:

" 'In the case before us, Teepak (like the railroad in *Ellis*) is seeking post-settlement contribution from a party against who the injured party never sought recovery but whom it claims contributed to the injured party's damages. As we held in *Ellis* this constitutes an action seeking post-settlement contribution rather than indemnity and the holding of *Kennedy* relative to 'comparative implied indemnity' is inapplicable. We conclude the trial court erred in holding Teepak had a valid cause of action against Learned predicated upon indemnification.' 237 Kan. at 328.

"As it had in *Ellis*, the court in *Teepak* strongly limited its holding in *Kennedy*:

" 'The difficulties that have arisen from the *Kennedy* decision primarily involve some overly broad language utilized therein. *Indemnification among those in the chain of distribution arises out of their contractual relationship with each other and* Kennedy *must be read in the context of its factual situation.* The use of the term 'joint tortfeasors' in Syl. ¶ 9 of *Kennedy,* an indemnity case, is unfortunate and has led to considerable confusion.' (Emphasis added.) 237 Kan. at 328.

. . . .

"Here, as in *Ellis* and *Teepak,* no commercial or contractual relationship existed between the settling defendant and the governmental entities it sought to pursue for post-settlement contribution, incorrectly denominated as 'indemnity or subrogation.' And, as in *Albertson,* the plaintiff could have sued the governmental entities in state court, but for reasons undisclosed to the court, chose not to do so." *Dodge City Implement, Inc.*, 38 Kan. App. 2d at 352-57.

Acknowledging, as they must, the obstruction that a vital one-action rule and *Ellis* and *Teepak* place in their path, DCI and Slattery assert that subsequent cases have revived their ability to pursue the County and the Township for comparative implied indemnity, or, as it is more accurately termed, postsettlement contribution. These cases, they assert, stand for a one-trial rule rather than a one-action rule.

Again, we have carefully reviewed Judge Caplinger's assessment of these more recent cases and cannot improve upon her description and analysis on behalf of the panel of our Court of Appeals. We therefore adopt the following from her persuasive opinion:

"DCI cites *Mathis v. TG & Y*, 242 Kan. 789, 751 P.2d 136 (1988), as evidence of this continued expansion of comparative implied indemnity. There, the plaintiff filed an action against TG & Y after a loose door closure struck plaintiff on the head as he was leaving a TG & Y store, resulting in personal injury. The plaintiff later filed a second lawsuit against several other defendants, alleging negligence as a result of the same incident. 242 Kan. at 790.

"After TG & Y settled the second lawsuit, TG & Y moved to dismiss Mathis' original suit based on *Albertson's* one-action rule. 242 Kan. at 790. On appeal, a

divided Supreme Court permitted Mathis to pursue the original suit because a judicial adjudication of the comparative fault of the defendants had not been made. 242 Kan. at 792-93. In a dissent, Justice Herd encouraged the majority to apply the one-action rule, insisting that it was more appropriate for dismissal with prejudice to be considered a determination of the case on its merits, and reasoning that to hold otherwise would permit parties to maintain additional actions arising out of the same incident against other parties. 242 Kan. at 794-95 (Herd, J., dissenting).

"However, unlike *Ellis, Teepak,* or the present case, *Mathis* involved successive tort claims by a plaintiff against different defendants, not a situation in which neither the plaintiff nor the settling defendant brought claims against a nonparty and then the settling defendant attempted to bring an action arising from its settlement of the first action. And, as Barber County and Moore Township note, *Mathis* distinguished *Teepak* and, in doing so, confirmed the continuing force of that holding.

"Although not mentioned in DCI's appeal brief, DCI sought to rely at oral argument upon *Anderson v. Scheffler,* 242 Kan. 857, 858, 752 P.2d 667 (1988), in further support of its argument regarding elimination of the one-action rule. We note that counsel for Barber County as well as Moore Township addressed this authority at argument, and both have also provided us with post-argument correspondence discussing and distinguishing *Anderson.*

"Anderson, a Missouri resident, was severely injured by an auger while delivering a load of poultry meal to a plant. Anderson filed suit against the owner and operator of the plant, Badger By-Products. Badger, a division of Beatrice Companies, Inc. (Beatrice) successfully removed the case to federal district court. Plaintiff's motion to remand the case to state court was denied. Plaintiff then amended his petition to join four additional defendants including Beatrice and Industrial Bearing and Transmission Company, Inc. (IBT), a Missouri corporation that sold the auger to Badger. 242 Kan. at 857-58.

"Anderson again moved to remand the case to state court because the addition of IBT as a party defendant would destroy diversity jurisdiction. The court granted plaintiff's motion to amend, adding the additional defendants, but did not include IBT because to do so would destroy diversity jurisdiction. Thereafter, plaintiff filed suit in state court against IBT and Randy Scheffler, an IBT employee who had accepted the auger order. 242 Kan. at 858-59. In the federal case, neither plaintiff nor any of the named defendants made any allegation of fault on the part of IBT or Scheffler. Plaintiff subsequently settled the federal case with Beatrice, releasing all parties except IBT and Scheffler and dismissing the case with prejudice. 242 Kan. at 858-59.

"On appeal, the Supreme Court held that a determination of comparative fault had not occurred. The court refused to apply *Albertson* and *Teepak* because plaintiff specifically attempted to retain the right to bring suit against IBT and Scheffler. Although seemingly questioning the rationale behind *Mathis,* the *Anderson* court permitted plaintiff to maintain a second suit. *Anderson,* 242 Kan. at 865-66.

"Although not cited by the parties, we note that the court applied *Mathis* in *Childs v. Williams*, 243 Kan. 441, 757 P.2d 302 (1988). There, the 12-year-old plaintiff was injured in an automobile accident, and the plaintiff's mother and the driver of the vehicle in which the plaintiff was a passenger negotiated a settlement agreement. Because of the plaintiff's minority status, which required court approval of the settlement agreement, the plaintiff's mother filed a negligence action against the driver on the plaintiff's behalf. Following a "friendly hearing," the court approved the settlement. 243 Kan. at 441. No determination of comparative fault occurred, nor did the plaintiff make any attempt to preserve a right of action against the driver of the other vehicle involved in the accident. 243 Kan. at 442.

"The plaintiff's mother subsequently filed a negligence action against the other driver. That action was dismissed by the district court based on *Albertson's* one-action rule. 243 Kan. at 442. Relying on *Mathis* and *Anderson,* our Supreme Court reversed the dismissal, permitting the plaintiff's mother to pursue the second suit because no judicial determination of comparative fault had occurred in the plaintiff's initial action. 243 Kan. at 443. In so holding, the court recognized an expansion of the one-action rule to permit a plaintiff to seek judicial determination of comparative fault, regardless of whether the plaintiff had the opportunity to do so earlier in an earlier action.

"DCI also relies upon *Mick v. Mani*, 244 Kan. 81, 766 P.2d 147 (1988), in support of its suggestion that the one-action rule has been abrogated. There, after the plaintiff received severe injuries while working on a drilling rig, he simultaneously filed two suits—a products liability suit against the steel, welding, and repair companies and a negligence action against Mani, a plastic surgeon, and others who had treated him. Although the defendants participated in joint discovery, the cases were never consolidated. All defendants except one were dismissed from the first case, and the jury found in favor of the remaining defendant. Similarly, all defendants were dismissed from the second case except Mani. 244 Kan. at 81-82.

"The *Mick* court affirmed the district court's summary judgment in favor of Mani, concluding that even without Mani's presence in the first action, the jury made a determination of comparative fault. The court concluded '[p]laintiff elected to separate his defendants but not his claims of damage. As a result, his entire damage claim was presented to the . . . jury. When that verdict became final, plaintiff's entire damage claim was ended.' 244 Kan. at 93. The court indicated the one-action rule should more appropriately be called the 'one-trial rule.' 244 Kan. at 93.

"Finally, DCI relies upon *Schaefer v. Horizon Bldg. Corp.*, 26 Kan. App. 2d 401, 985 P.2d 723 (1999). In *Schaefer,* homeowners sued the general contractor and 'John Doe' for remedial cement work performed on their home. The general contractor settled the claims and subsequently brought a third-party comparative implied indemnity claim against the subcontractor. This court recognized that comparative implied indemnity is 'an equitable remedy available to a single defendant, among a number of tortfeasors, who by settling with the plaintiff or

paying a judgment, pays the other tortfeasors' share of liability.' 26 Kan. App. 2d at 403. Nevertheless, the court held that the general contractor did not have a valid comparative implied indemnity claim against the subcontractor because the subcontractor was not at risk of suit as the statute of limitations on the homeowners' claims had expired. 26 Kan. App. 2d at 403. The court held:

" 'In order to prevail on a claim for partial indemnity or contribution against a third-party defendant, the settlor must show it actually paid damages on behalf of that third party. If the third party was never at risk of having to pay for its own damages, the settlor cannot show it benefitted the third-party defendant, and the value of its contribution claim is zero.' 26 Kan. App. 2d 401, Syl. ¶ 2.

"Our review of the cases decided post-*Albertson* reveals that certain exceptions to the one-action rule have been recognized in limited situations. Therefore, the question for this court becomes whether the facts of the present case fit under the broader rule as expressed in *Mathis* and recognized in *Anderson* as DCI suggests, or whether the facts remain squarely within the rule announced in *Ellis* and *Teepak*, as the County and Township suggest.

"We note that the court in *Anderson* permitted plaintiff to pursue a second action against defendants not involved in the original lawsuit, holding that 'where a plaintiff is prevented from joining a necessary party in federal court because of loss of diversity, as in this case, the action against that party survives in state court as an *exception* to the rule in *Albertson*.' (Emphasis added.) 242 Kan. at 865.

"Here, unlike the plaintiff in *Anderson*, DCI did not make any attempt to join Moore Township or Barber County in the underlying action. Moreover, DCI does not explain its failure to join the governmental entities or suggest that it was otherwise prevented from doing so. While DCI persuasively asserts that the harshness of the one-action rule has been ameliorated, the exception provided in *Anderson* does not logically apply here.

"Moreover, our review of *Mathis* and its progeny reveals that those cases also do not control the outcome of the present case. In *Mathis*, the Supreme Court permitted plaintiff to pursue a second action only in limited circumstances. The court reasoned:

" 'After an adjudication of comparative fault, no party should be afforded a second opportunity to litigate percentages of causal negligence. K.S.A. 60-258a certainly contemplates one action in which comparative fault is determined. However, it was never the intent of the legislature or this court to place form over substance and preclude *a plaintiff* from proceeding against a tortfeasor when there has been no judicial determination of comparative fault. Mathis has been denied his action. TG & Y is not prejudiced by allowing the suit to proceed. It may join other defendants for the purpose of comparing negligence at the trial.' (Emphasis added.) 242 Kan. at 794.

"There is little doubt that the *Albertson* court, when it considered the purpose behind K.S.A. 60-258a, anticipated the one-action rule would apply to prevent both plaintiffs and defendants alike from seeking additional recovery in subsequent lawsuits. However, as the one-action rule has evolved, the courts have seem-

ingly developed a preference for permitting *plaintiffs* to pursue a second suit against defendants not party to the original action. See, *e.g., Childs,* 243 Kan. at 441. As the court in *Mick* recognized, '[I]t appears that under the most recent comparative fault cases, namely *Mathis, Anderson,* and *Childs,* a *plaintiff* may pursue separate actions against tortfeasors where there has been no judicial determination of comparative fault. Thus, the exceptions to the one-action rule arise when there has been no prior judicial determination of fault.' (Emphasis added.) 244 Kan. at 93.

"Relying upon *Mick,* DCI argues comparative implied indemnity need only be sought from the third party *before* an apportionment of fault is made in the underlying action. However, in *Mick* the court prevented plaintiff from pursuing a second action because the jury had made a determination of comparative fault at trial by denying plaintiff relief. Significantly, *Mick* involved an attempt by the *plaintiff* to achieve multiple recovery. Again, DCI cites no authority for its suggestion that this exception to the one-action rule may be extended to defendants.

"Further, we find flaws in DCI's citation of *Schaefer* to support its claim that DCI's cause of action here was preserved because the statute of limitations had not expired. Although this court in *Schaefer* based its dismissal of the plaintiff's claim on the fact that the third-party defendant was no longer at risk of suit because the statute of limitations had expired, 26 Kan. App. 2d at 403, the *Schaefer* court did not indicate an intent to permit defending parties to pursue claims for comparative implied indemnity at will. Rather, the court refused to undergo an in-depth analysis regarding whether a claim for comparative implied indemnity was feasible when such a claim would have been barred by the statute of limitations regardless of the outcome.

"Further, while it is tempting to rely upon the district court's rationale that the basis for denying DCI's cause of action was the failure to join Barber County and Moore Township pursuant to K.S.A. 60-258a, this conclusion is inappropriate. The purpose of K.S.A. 60-258a is not to impose liability on a joint tortfeasor but to protect a defendant from bearing the entire burden for its nonparty joint tortfeasors. See *Ellis,* 231 Kan. at 189. K.S.A. 60-258a cannot expand liability to a tortfeasor from whom plaintiff has not sought recovery. See *Ellis,* 231 Kan. at 191-92 ('It is inconsistent then to suggest the action of one defendant in settling the claim can broaden another defendant's liability beyond what it would have been had the case gone to trial.'). Thus, even if DCI had joined Barber County and Moore Township under K.S.A. 60-258a, DCI's claim for comparative implied indemnity would nevertheless be unavailable.

"Moreover, even if Moore Township and Barber County had been joined in the federal action pursuant to K.S.A. 60-214, DCI could not pursue an action for comparative implied indemnity under *Kennedy.* As discussed above, the Supreme Court in *Teepak* expressly limited comparative implied indemnity to cases involving indemnification among those in the chain of distribution, rejecting the notion that a claim was available against all 'joint tortfeasors.' 237 Kan. at 328; see also *Ellis,* 231 Kan. at 184; *Blackburn, Inc. v. Harnischfeger Corp.,* 773 F. Supp. 296,

299 (D. Kan. 1991) (acknowledging that claim for comparative implied indemnity was limited to parties in manufacturer's chain of distribution and supply or parties in which explicit contract for indemnification or contribution was formed)." *Dodge City Implement, Inc.*, 38 Kan. App. 2d at 357-63.

We also agree with and endorse the panel's ultimate conclusion on this issue. An action for comparative implied indemnity was not available to DCI and Slattery, and summary judgment in favor of the County and Township on this claim was appropriate.

"[W]e interpret Kansas law to require defendants seeking to minimize their liability in comparative fault situations not involving a chain of distribution or similar commercial relationship to do so by comparing the fault of other defendants in order to reduce their own share of liability and damages. If a defendant chooses to settle and obtain release of common liabilities involving other parties whom the plaintiff did not sue, the defendant does not have an action for comparative implied indemnity or post-settlement contribution. This holding recognizes that under Kansas comparative fault procedure such a remedy is not necessary, and further recognizes that such an action defeats the policy of judicial economy, multiplying the proceedings from a single accident or injury.

"The United States District Court for the District of Kansas succinctly summarized the rule from *Ellis* and *Teepak* as barring lawsuits between joint tortfeasors when

'(1) an injured party has previously sued one tortfeasor, but not others, (2) that tortfeasor has settled with the injured party, (3) the injured party has given a full release of all claims held by it, and (4) the settling tortfeasor claims the other tortfeasors caused all or part of the injured party's damages." *St. Francis Regional Medical Center, Inc. v. Critical Care, Inc.*, 997 F. Supp. 1413, 1430 (D. Kan. 1997).

"Here, BNSF sued DCI but did not sue Moore Township or Barber County; DCI settled with BNSF; BNSF gave a full release of claims in the settlement agreement; and DCI now seeks to recover from Moore Township and Barber County, alleging those parties caused all or part of BNSF's injuries. Under these circumstances, we hold the district court properly dismissed DCI's claim for comparative implied indemnity." *Dodge City Implement, Inc.*, 38 Kan. App. 2d at 363-64.

In short, the one-action rule of *Albertson* is alive and well in Kansas. The fact that DCI and Slattery chose to settle BNSF's claim did not entitle them to status as a clearing house for comparison of fault among potential tortfeasors. They were not entitled to bring a second action against the County and the Township, when the County and the Township had no involvement in the federal case.

### Notice Under K.S.A. 12-105b(d)

The second issue raised by DCI and Slattery on this appeal concerns the notice provisions of K.S.A. 2008 Supp. 12-105b(d)—specifically, whether letters sent to the County and the Township were adequate to inform them of the negligence and negligence per se claims seeking damages of $92,313.34.

Interpretation or construction of a statute raises a question of law reviewable on appeal under a de novo standard. *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004). Likewise, this court exercises unlimited review over the construction of a written instrument and the determination of its legal effect. *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, 133, 754 P.2d 803 (1988).

The statute provides:

"Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim. The contents of such notice shall not be admissible in any subsequent action arising out of the claim. Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period. No person may initiate an action against a municipality unless the claim has been denied in whole or part. Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, a claimant shall have no less than 90 days from the date the claim is denied or deemed denied in which to commence an action." K.S.A. 2008 Supp. 12-105b(d).

Any person or entity with a claim against a municipality under the Kansas Tort Claims Act must file a written notice of the claim with the municipality, and the filing of a proper notice is a prerequisite to the filing of an action in district court. If the statutory notice requirement is not met, the court cannot obtain jurisdiction over the municipality. *Kau Kau Take Home No. 1 v. City of Wichita*, 281 Kan. 1185, Syl. ¶ 2, 135 P.3d 1221 (2006). However, DCI and Slattery are correct that only substantial compliance with K.S.A. 12-105b(d) is necessary. See K.S.A. 12-105b(d). " 'Substantial compliance' " means " ' "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." ' " *Orr v. Heiman*, 270 Kan. 109, 113, 12 P.3d 387 (2000). The statutory objectives are to advise the municipality of the time and place of the injury and to give the municipality an opportunity to ascertain the character and extent of the injury sustained. *Bell v. Kansas City, Kansas, Housing Authority*, 268 Kan. 208, 210, 922 P.2d 1233 (1999).

The statute lists five categories of information that must be included in the written notice filed with the County's and the Township's clerk. They are: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested.

The August 23, 2004, letter to the County stated that the claimant was Continental Western Insurance Company and gave the name and address of one of the company's subrogation specialists as the contact for more information. The "Factual Basis of the Claim" read:

"On September 8, 2003 at 2:23 p.m., Justin Slattery, while in the course of employment for Dodge City Implement, Inc. and while driving a Dodge City Implement Inc. truck, was struck by a Burlington Northern and Santa Fe Railway Company (BNSF) freight train at the Rattlesnake Trail railroad grade crossing,

DOT #014288A in Barber County, Kansas. Such collision caused extensive damage to Dodge City Implement's truck and cargo and the derailment of BNSF's train. A contributing cause of this collision was the failure to appropriately maintain railroad crossing signage, specifically advance warning signs. This failure combined with and enhanced the already existing dangerous nature of the crossing resulting from unsafe crossing design, a failure to maintain vegetative growth and earthen obstructions, all of which led to extremely restricted sight distance; permissible train speeds in excess of those safe for the crossing in question, and; an excessively short highway approach forcing drivers approaching the crossing to divert attention away from safely crossing the railroad tracks and toward motor vehicle traffic on the highway. Pursuant to the Railroad Crossing Safety Program Agreement providing for the upgrade and modernization of the Rattlesnake Trail crossing and executed between Barber County and the Kansas Secretary of Transportation of April 14, 1993, Barber County assumed the sole responsibility to maintain the traffic control devices placed on roadways under its jurisdiction. By failing to maintain the advance warning signs placed on Rattlesnake Trail, Barber County breached such duty. As stated above, this breach caused or was a contributing cause of the collision. As Continental Western Insurance Company, the liability insurer of Dodge City Implement, and BNSF have reached a settlement in the amount of $3,000,000.00, Continental Western Insurance Company is now entitled to comparative implied indemnity from Barber County for amounts paid to BNSF on behalf of Barber County as a result of its negligence."

The "Nature and Extent of Injury [S]uffered" and "Amount of Damages Requested" sections of the letter listed only the damages to BNSF and the settlement amount paid as a result of the federal lawsuit.

The August 12, 2005, letter to the Township also listed Continental Western and its subrogation specialist as the claimant and contact. The "Factual Basis of the Claim" was similar. It read:

"On September 8, 2003 at 2:23 p.m., Justin Slattery, while in the course of employment for Dodge City Implement, Inc. and while driving a Dodge City Implement, Inc. truck, was struck by a Burlington Northern and Santa Fe Railway Company (BNSF) freight train at the Rattlesnake Trail railroad grade crossing, DOT #014288A in Barber County, Kansas. Such collision caused extensive damage to Dodge City Implement's truck and cargo and the derailment of BNSF's train.

"The Moore Township had the responsibility and duty to design, construct, and maintain all roads and railroad grade crossings under or within its jurisdiction in a reasonably safe manner. Moore Township breached its duty by failing to maintain the advance warning signs placed on Rattlesnake Trail, permitting vegetative growth and earthen obstructions to obscure visibility of approaching trains at the

grade crossing, and designing the road and grade crossing in such fashion that the angle of Rattlesnake Trail's approach to the railroad grade crossing and the excessively short highway approach between the Rattlesnake Trail grade crossing and Highway K-2 prevented visibility of approaching trains. All of these conditions, together or separately, created a dangerous condition for vehicles crossing the Rattlesnake Trail grade crossing and caused or contributed to the aforementioned accident.

"Following the accident, Continental Western Insurance Company, the liability insurer of Dodge City Implement, and BNSF reached a settlement in which Continental Western Insurance Company paid $3,000,000.00 to BNSF. As a result of such payment, Continental Western Insurance Company is now entitled to comparative implied indemnity from Moore Township for amounts paid to BNSF on behalf of Moore Township as a result of its negligence."

The "Nature and Extent of Injury [S]uffered" and "Amount of Damages Requested" sections of the Township letter were identical to the corresponding sections in the County letter.

Prior Court of Appeals cases have held that, in order to substantially comply with K.S.A. 12-105b, a plaintiff must attempt to supply information for each of the five categories in the statute if relevant to the facts of the case; omission of one or more of the categories makes the notice fatally insufficient. See *Tucking v. Board of Jefferson County Comm'rs*, 14 Kan. App. 2d 442, 446-48, 796 P.2d 1055 (1990) (two categories of information neglected; three others only partially satisfied), *rev. denied* 246 Kan. 770 (1990); see also *Wiggins v. Housing Authority of Kansas City*, 19 Kan. App. 2d 610, 613-14, 873 P.2d 1377, *rev. denied* 255 Kan. 1007 (1994) (second category of information missing).

In this case, the letters listed only Continental Western Insurance Company as the claimant and provided only the name of its agent and its address. Although the letters briefly described the collision of DCI's truck, driven by Slattery, with BNSF's train, they did not identify DCI or Slattery as claimants. The letters also did not state that DCI and Slattery were represented by the law firm shown on the letterhead. Finally, the letters told the County and the Township that "Continental Western Insurance Company is now entitled to comparative implied indemnity . . . for amounts paid to BNSF" and gave the extent of the amount of the damages as only $3 million, *i.e.*, the amount of the settlement with BNSF,

not the amount of that settlement plus the $92,313.34 in damages on the DCI/Slattery claims for negligence or negligence per se against the County and Township.

Although we may not agree with a mechanical counting of categories approach to determining substantial compliance with K.S.A. 12-105b(d), we have no hesitation in affirming the Court of Appeals and the district court on this issue. The notice provided to the County and the Township here did not substantially comply with the requirements of K.S.A. 12-105b(d). In essence, the letters identified an incorrect claimant; they did not identify the ultimate plaintiffs in the suit, give their addresses, or set forth the name or address of their counsel. They also did not put the County or the Township on notice of the extent of the damages sought on the negligence or negligence per se claims.

We regard these failures as more than merely technical; they posed serious obstacles to the County's and the Township's full investigation and understanding of the merits of the claims advanced. Without such investigation and understanding, the legislature's obvious desire to facilitate early and easy resolution of claims against municipalities is undermined. The notices did not serve their purpose, and they did not provide the district court with jurisdiction over the negligence and negligence per se claims.

The decision of the Court of Appeals affirming the district court is affirmed, and the decision of the district court is affirmed.